In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1029

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES O. EUBANKS, also known as
CHUCKIE, also known as TROUBLE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 3:07-cr-50058-1—**Philip G. Reinhard,** *Judge.*

ARGUED OCTOBER 26, 2009—DECIDED JANUARY 28, 2010

Before BAUER and SYKES, *Circuit Judges*, and SIMON,
*District Judge.*[*]

SIMON, *District Judge.* Charles Eubanks pled guilty to
two counts of robbery, 18 U.S.C. § 1951(a), and one

---

[*] The Honorable Philip P. Simon, United States District Court
Judge for the Northern District of Indiana, sitting by designa-
tion.

count of using a firearm in furtherance of one of the robberies, 18 U.S.C. § 924(c). The district court sentenced Eubanks to 192 months for the two robberies and a consecutive 84 months' sentence for the firearm charge. Eubanks appeals his sentence on the robbery counts claiming that the district court incorrectly calculated his offense levels and criminal history in determining his guideline sentence. We agree, in part, and vacate Eubanks' sentence and remand the case to the district court for resentencing.

## I. Background

Eubanks and four others committed a string of armed robberies which led to a fifteen-count indictment in which Eubanks was charged in nine of the counts. Pursuant to a plea agreement, Eubanks pled guilty to two robberies (Counts 12 and 14), and using and carrying a firearm during the commission of one of those robberies (Count 13). As part of his plea agreement, Eubanks also stipulated to committing the robberies alleged in Counts 8 and 10 of the indictment.

Count 12 involved the armed robbery of a beauty supply store, and Count 13 was the gun charge associated with that robbery. Here's what happened: Eubanks, armed with a plastic B.B. gun, entered the store with two co-defendants, both packing semi-automatic handguns. The three men pulled out their guns, pointed them at store employees, and demanded money from the cash register. Eubanks and a co-defendant then began beating the store owner with Eubanks clobbering him in

the head with the B.B. gun causing bruising and lacerations. The injuries required medical attention, including four staples to the store owner's head. One of the co-defendants then forced a store employee at gunpoint to a back room to retrieve the store's surveillance video. Eubanks knew the co-defendants used and carried real firearms during commission of the robbery.

In Count 14, Eubanks and two co-defendants were charged with robbing a small jewelry store. Upon entering the store, Eubanks hopped over the front counter and forced a store employee to the ground at gunpoint. Eubanks then dragged a second store employee about six feet, from the back room of the store to the front room, causing minor injuries consisting of scratches and bruising.

At the sentencing hearing, the court sentenced Eubanks to 84 months for Count 13, as the parties agreed in the plea deal, because both co-defendants used and carried a firearm during commission of the robbery, and Eubanks was held responsible for their actions. Regarding the robberies alleged in Counts 12 and 14, however, the district court disagreed at times with the agreement the parties had reached and with the recommendations in the Presentence Report (PSR).

The robbery of the beauty supply shop in Count 12 started with a base offense level of 20. The court then added four levels for otherwise using a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(D). The court also added three levels because a victim sustained injuries that were somewhere between a "bodily injury" and a

"serious bodily injury" and four levels for abducting the victim. *See* U.S.S.G. § 2B3.1(b)(3) and (4). That left a total offense level of 31 for Count 12, according to the district court.

The jewelry store robbery in Count 14 also started with a base offense level of 20. The district court then added six levels for otherwise using a firearm (recall that there was no § 924(c) charge associated with Count 14), two levels for causing bodily injury, and, again, four levels for abducting the victim. *See* U.S.S.G. § 2B3.1(b)(2)-(4). The total offense level for Count 14 was 32. The court also found that stipulated Count 8 carried an offense level of 26 and stipulated Count 10 carried an offense level of 25.

Based on these findings, the district court conducted a unit analysis under U.S.S.G. § 3D1.4 and then subtracted three levels because Eubanks accepted responsibility, thus finding that Eubanks' total offense level was 32. The district court also determined that Eubanks had eleven criminal history points, putting him in criminal history category V. This yielded a recommended range under the guidelines of 188-235 months. The court sentenced Eubanks to 192 months for Counts 12 and 14, to be consecutive to the 84-month sentence in Count 13.

## II. Discussion

On appeal, Eubanks raises a host of arguments concerning how the district court calculated the offense levels for the two robbery counts. He contends the district

court incorrectly applied the weapons, injury, and abduction enhancements for both robberies, and also that the district court incorrectly calculated his criminal history points. We review the district court's factual findings for clear error and its interpretation and application of the Sentencing Guidelines de novo. *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009). First we will address each of Eubanks' arguments, and then we will determine if any of the errors were harmless.

### A.  Weapons Enhancements

The district court tagged Eubanks with a weapons enhancements for both Counts 12 and 14, and he claims this was an error. For Count 12, Eubanks argues that the district court improperly added four levels to his base offense level under U.S.S.G. § 2B3.1(b)(2)(D) for a dangerous weapon "otherwise used" because he hit the store owner in the head with a plastic B.B. gun during commission of the robbery. This was impermissible double counting according to Eubanks because he received an 84-month sentence for using and carrying a firearm in Count 13 pursuant to 18 U.S.C. § 924(c)—the same conduct at issue in the enhancement. Thus, given that he was already punished for using a firearm, the district court could not enhance his sentence for use of the B.B. gun in the same underlying offense. The government agrees with Eubanks. Because Eubanks challenges the legal interpretation of the Sentencing Guidelines and relevant statutes, we review de novo. *United States v. White*, 222 F.3d 363, 372 (7th Cir. 2000).

If a defendant is sentenced for using a firearm in furtherance of a violent crime under § 924(c), the sentencing court may not enhance the defendant's sentence under the guidelines for the same weapon and conduct that underlie the § 924(c) conviction. *White*, 222 F.3d at 373; U.S.S.G. § 2K2.4, comment (n.4). And the sentence under § 924(c) accounts for all guns used in relation to the underlying offense. *See White*, 222 F.3d at 374 ("[B]ecause a § 924(c) penalty accounts for all of the guns possessed, carried, or used by the defendant in relation to an underlying offense, a guidelines enhancement cannot also be imposed for use of more than one gun in the same underlying offense."); U.S.S.G. § 2K2.4, comment (n.4) (instructing sentencing courts not to "apply any weapon enhancement in the guideline for the underlying offense" if "a co-defendant, as part of the jointly undertaken criminal activity, possessed a firearm different from the one for which the defendant was convicted under" § 924(c)). But "a defendant may receive both the § 924(c) statutory sentence and a guidelines enhancement if the enhancement and the statutory sentence are imposed for different underlying conduct." *White*, 222 F.3d 373.

Here, the district court held that the firearms that gave rise to the § 924(c) conviction were different than the weapon responsible for the enhancement. The district court reasoned that Eubanks' sentence under § 924(c) was for the semi-automatic handguns possessed by the co-defendants, while the enhancement under U.S.S.G. § 2B3.1(b)(2)(D) was for Eubanks' use of the plastic B.B. gun. The district court believed this to be permissible

because § 924(c) requires use of a firearm, and, according to 18 U.S.C. § 921, a B.B. gun is not a firearm. The district court concluded that because Eubanks could not have been sentenced under § 924(c) for using the B.B. gun, his use of the weapon was not subsumed by the § 924(c) sentence, and the four-level enhancement was proper.

The problem with this analysis is that for enhancement purposes, real guns are treated as indistinguishable from fake guns. *White*, 222 F.3d at 375 n.7. To hold otherwise

> would lead to the perverse result that a defendant who uses a real gun and a fake gun in the commission of the same offense is eligible to receive a higher sentence than a defendant who used two real guns to commit the same crime. This is because the former defendant could receive both a statutory sentence under § 924(c) for the real gun and a Guidelines enhancement for the fake gun, while the latter defendant, whose conduct presents a greater risk of harm, could only receive either the statutory sentence or the Guidelines enhancement, but not both. We do not interpret the Guidelines to produce this result which is clearly contrary to their policy and purpose.

*Id*. If we were to adopt the district court's reasoning, Eubanks would be subject to an enhancement under U.S.S.G. § 2B3.1(b)(2)(D) for otherwise using a plastic B.B. gun, but would have been precluded from such an enhancement if he had beat the store owner with a real firearm. Such a ruling would not only be contrary to the policy and purpose of the guidelines, but would lead

to the odd result we cautioned against in *White*. *See also United States v. Katalinic*, 510 F.3d 744, 747-48 (7th Cir. 2007). Thus, the sentence under § 924(c) "account[ed] for all of the guns possessed, carried, or used" by Eubanks and the co-defendants in relation to the robbery, including the plastic B.B. gun. *White*, 222 F.3d at 374. So the district court's four-level enhancement under U.S.S.G. § 2B3.1(b)(2)(D) was impermissible double counting.

Regarding Count 14, Eubanks argues that the district court's six-level weapons enhancement for "otherwise using" a firearm under U.S.S.G. § 2B3.1(b)(2)(B) was also improper. Recall that in the jewelry store robbery, Eubanks hopped over the front counter and pointed his weapon at a store employee, forcing the employee to the ground. Eubanks contends that this conduct only warranted a five-level enhancement for brandishing a firearm, and indeed this is what the parties stipulated to in the plea agreement. The district court disagreed holding that because Eubanks pointed the weapon at a specific victim and put that victim to the ground, he personalized the threat. The district court felt that this conduct was "otherwise using" the firearm (a six-level enhancement), rather than brandishing the firearm (a five-level enhancement). *See* U.S.S.G. § 2B3.1(b)(2)(B) and (C).

The definitions of "brandishing" and "otherwise use" in the guidelines are largely unhelpful. *United States v. Hernandez*, 106 F.3d 737, 741 (7th Cir. 1997). The term "brandished" means that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate

that person." U.S.S.G. § 1B1.1, comment (n.1(C)). By contrast, the guidelines define "otherwise use" as "conduct [that] did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." U.S.S.G. § 1B1.1, comment (n.1(I)). We have previously held that "pointing a weapon at a specific victim created a personalized threat of harm," warranting an "otherwise use" adjustment. *United States v. Warren*, 279 F.3d 561, 563 (7th Cir. 2002); *United States v. Taylor*, 135 F.3d 478, 483 (7th Cir. 1998). Conversely, brandishing typically occurs where a defendant generally displays a weapon or points the weapon at a group of people rather than a specific individual. *See Hernandez*, 106 F.3d at 741 (noting the difference between "pointing or waving about a firearm and leveling the weapon at the head of a victim"). Because we have no reason to doubt that Eubanks pointed his weapon at a specific employee and forced the employee to the ground, the district court's factual finding was not clearly erroneous, and the six-level enhancement for "otherwise using" the firearm in Count 14 was appropriate. *See* U.S.S.G. § 2B3.1(b)(2)(B).

## B. Injury Enhancements

Eubanks contests the district court's application of injury enhancements for both Counts 12 and 14. He argues the district court erred by assessing a three-level enhancement in Count 12 (the beauty supply store robbery) based on a finding that the victim sustained an injury between bodily injury and serious bodily injury. *See*

U.S.S.G. § 2B3.1(b)(3). Eubanks contends that the victim's injuries in Count 12, which included bruises and lacerations to the victim's head, were more akin to bodily injury, warranting a two-level enhancement. *Id*. He also argues that the district court erred by increasing two levels for bodily injury in Count 14 (the jewelry store robbery). In that robbery, Eubanks dragged a store employee by her hair causing head pain, scraped and bloodied knees, bruises on her arms, and damaged fingernails and hands. The injuries did not require medical attention. According to Eubanks, the record shows these injuries were minor, rather than significant, and thus a two-level increase was excessive.

The guidelines define "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1, comment (n.1(B)). "Serious bodily injury" is defined as an injury involving "extreme physical pain" or "requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1, comment (n.1(L)). As noted, a bodily injury enhancement requires a two-level increase, while a serious bodily injury enhancement carries a four-level increase. U.S.S.G. § 2B3.1(b)(3).

In Count 12, the district court considered the victim's affidavit and a photograph of the victim's injuries in determining the extent of the injuries. The court held that because the bruises and lacerations required medical attention, including four staples to close the head wound, and because the victim almost lost con-

sciousness, the injury fell somewhere in the continuum between "bodily injury" and "serious bodily injury," and so the court assessed a three-level increase. The district court was well within its discretion in finding that the injuries were greater than a "significant" but not quite "serious." *See e.g., United States v. Ledford*, 218 F.3d 684, 691 (7th Cir. 2000) (bodily injury where victim suffered "bruising on her side and arm"); *United States v. Bogan*, 267 F.3d 614, 624 (7th Cir. 2001) (serious bodily injury where victim suffered lacerations requiring sutures, a fractured eye-socket, emotional distress, migraine head-aches, and the potential loss of teeth). The district court is in the best position to make this factual determination after viewing the relevant evidence. *See United States v. Hamm*, 13 F.3d 1126, 1128 (7th Cir. 1994) ("Because the district court hears this evidence, it is by far best-suited to assess these myriad factors and determine whether a 'significant injury' has occurred.") (quoting *United States v. Lancaster*, 6 F.3d 208, 210 (4th Cir. 1993)). The district court's three-level enhancement in Count 12 was entirely appropriate.

Similarly, in Count 14, the district court examined an affidavit and photographs of the victim's injuries in determining that a bodily injury enhancement was war-ranted. The court found that the victim's scrapes and bruises amounted to significant injuries that were "painful and obvious." Our case law supports this finding. *See Ledford*, 218 F.3d at 691; *Hamm*, 13 F.3d at 1127-28 (finding bodily injury where victim "suffered bumps and bruises and had the wind knocked out of him as a result of being hit and knocked down" and "sustained a back injury

requiring chiropractic treatment"). And, once again, because we largely defer to the district court on this fact-specific inquiry, absent clear evidence to the contrary, the finding should not be disturbed on appeal. *See Hamm*, 13 F.3d at 1128. The two-level bodily injury enhancement in Count 14 was thus proper.

## C.  Abduction Enhancements

In a robbery case, the guidelines sensibly punish an abduction of a victim (a four-point enhancement) more harshly than a restraint of a victim (a two-point enhancement). *See* U.S.S.G. § 2B3.1(b)(4). But the line between a restraint and an abduction is a bit hazy. Eubanks says that the conduct in Count 12, in which one of the co-defendants forced an employee to the back of the beauty supply store to retrieve a surveillance video, was a "restraint" not an "abduction." He also contends that in the jewelry store robbery in Count 14, where the victim was dragged less than six feet, the conduct should likewise have been deemed a restraint instead of an abduction.

Under the guidelines, an abduction occurs when "a victim was forced to accompany an offender to a different location." U.S.S.G. § 1B1.1, comment (n.1(A)). Restraint is "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, comment (n.1(K)). Here, the issue turns on whether the store employees were forced to accompany the defendants to "a different location." If the answer to that question is yes, then an abduction occurred. Because this depends

on an interpretation of the Sentencing Guidelines, our review is de novo. *White*, 222 F.3d at 372.

Eubanks argues that forcing an employee to another room in the same small building warrants only a two-level enhancement for restraint. Both the PSR and the government (at least in its briefing in the district court) agreed that the conduct in both robberies was better characterized as a restraint rather than an abduction. Nonetheless, the district court *sua sponte* held that trans-porting the victims from one room to another in the same building—even if they are small retail stores—satisfied the movement "to a different location" require-ment, thus warranting a four-level abduction enhance-ment for both robberies. Recall that in Count 12 (the beauty supply store robbery) the victim was taken to the back room to retrieve the surveillance tape while in Count 14 (the jewelry store robbery) the victim was dragged about six feet, again from the back room to the front of the store. The court found that moving an em-ployee to another room was more serious than keeping all of the employees in the same room because it isolated the employee, increasing the likelihood that the employee would resist and thus increasing the chance of injury.

An abduction enhancement is not supported by this Circuit's case law. In *United States v. Carter*, 410 F.3d 942, 954 (7th Cir. 2005), we held that forcing a bank teller at gunpoint from the back vault to her drawer against her will constitutes a restraint. And in a similar case, we held that a restraint enhancement was appropriate

where the defendant directed three bank tellers to a small room in the back of the bank at gunpoint. *United States v. Doubet*, 969 F.2d 341, 346 (7th Cir. 1992); *see also United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998) ("[O]rder[ing] a jewelry store employee and customer to the back room at gunpoint . . . constitutes physical restraint."). By contrast, forcing a bank employee at gunpoint from a parking lot into the bank warranted a four-level enhancement for abduction. *United States v. Taylor*, 128 F.3d 1105, 1110-11 (7th Cir. 1997); *see also United States v. Gall*, 116 F.3d 228, 230 (7th Cir. 1997) (abduction enhancement proper where victims were forced at gunpoint into trucks and drove around "a significant distance"); *United States v. Davis*, 48 F.3d 277, 279 (7th Cir. 1995) (forcing victim at gunpoint from parking lot to inside the credit union satisfied abduction requirement).

The district court relied on a recently decided Fourth Circuit case, *United States v. Osborne*, 514 F.3d 377 (4th Cir. 2008), in finding the abduction enhancements applicable. In *Osborne*, the Fourth Circuit began by finding the "absence of movement across a building threshold or property line does not bar the conclusion that movement 'to a different location' occurred." *Id*. at 389. Instead, it adopted a more flexible, case by case approach that did not mechanically rely "on the presence or absence of doorways, lot lines, thresholds, and the like." *Id*. at 389-90 (internal quotations omitted). From there, the *Osborne* court held that the defendant's forced movement of Walgreens employees from the pharmacy section through the store area to the front door of the Walgreens building amounted to abduction under the guidelines. *Id*. at 391. In

so finding, the court relied heavily on the fact that the defendant forced the victims to accompany him so he could "keep[ ] [the] victims close by as readily accessible hostages." *Id*. at 390.

The facts here are significantly different from *Osborne*. In *Osborne*, the defendant forced store employees from an independent section of the store, which was separated by a secured door and only accessible by authorized persons via keypad, through the entire building and out to the front door. More importantly, the victims in *Osborne* were essentially taken hostage to facilitate the defendant's escape—which is the type of conduct "plainly targeted by the abduction enhancement." *Osborne*, 514 F.3d at 390. But in Count 12, a co-defendant forced a store employee to the back room of a retail beauty supply store to retrieve a surveillance video. And in Count 14, the victim was moved no more than six feet. Thus, the distance and nature of the confinements in this case were materially different than in *Osborne*.

We think that this case is indistinguishable from cases such as *Carter* and *Doubet*. Under these facts, and taking into account the physical dimensions of the structures at issue, transporting the victims from one room to another is simply not enough for abduction. To find otherwise would virtually ensure that any movement of a victim from one room to another within the same building, without any other aggravating circumstances, would result in an abduction enhancement. While there may well be situations in which an abduction enhancement is proper even though the victim remained within

a single building, those facts are not present here. Thus, the district court erred by enhancing Eubanks' offense levels four points for Counts 12 and 14. Instead, these counts should be enhanced two levels each for restraint.

### D. Criminal History

Finally, Eubanks challenges the district court's determination that his criminal history points totaled eleven, putting him in criminal history category V. At issue is whether the district court correctly assessed four points for two juvenile offenses. The first offense occurred in July 2001, when Eubanks was charged with theft of a firearm and placed on probation. Then in May 2002, he was charged with two counts of armed robbery and one count of aggravated robbery. For these offenses, his probation for the theft of a firearm offense was revoked, and Eubanks was sentenced to the Illinois Department of Corrections on October 24, 2003. He was paroled on June 29, 2004. All offenses were adjudicated under the same case number. The district court assessed two points for the theft of the firearm and two points for the armed robbery offenses because the incidents were separate offenses under the guidelines.

Eubanks argues that the district court double counted by giving him four points—two for the theft of firearms offense and two more for the armed robbery. He believes that he should have only been given a total of two points because the armed robbery is what led to his probation being revoked for the theft of firearms offense. Not so. The underlying conviction is the theft of the

firearm in 2001. This is the offense that landed Eubanks on probation. The theft of the firearm and the revocation of probation are thus a single conviction—indeed, they are listed as such on Eubanks' juvenile docket sheet. *See* U.S.S.G. § 4A1.2(k), comment (n.11); *United States v. Palmer*, 946 F.2d 97, 99 (9th Cir. 1991) (holding the "sentence on the underlying conviction and on the revocation of probation is considered a 'single conviction'"). Because Eubanks received a sentence of more than sixty days on the revocation, he was properly assessed a two-level enhancement in his criminal history score.

The armed robbery—the offense that led to the revocation of his probation—was a separate, unrelated offense. The district court correctly computed this offense separate from the revocation offense for the purpose of criminal history points, despite the fact the offenses were all adjudicated under the same juvenile case number.[1] Indeed, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2(a)(2). Merely because Eubanks was sentenced for these offenses on the same day does make them one charge for criminal history purposes. *See e.g., United States v. Statham*, 581 F.3d 548, 554-55 (7th Cir. 2009) (district court properly

---

[1] In fact, Eubanks' docket sheet states that the sentence for the armed robbery offenses was to run "concurrent" meaning that the sentence for the armed robbery offenses was a different offense from the revocation of probation/theft of the firearm sentence.

assigned separate criminal history points for multiple offenses sentenced on the same day, with two of the sentences running concurrent, "because each offense was separated by an intervening arrest and the events and victims involved in the three cases were completely different."). So Eubanks was correctly given an additional two-point increase in his criminal history score for the armed robbery.

Eubanks contends, however, that the five-year statute of limitations under U.S.S.G. § 4A1.2(d)(2)(B) precludes an enhancement for the theft of a firearm charge. But U.S.S.G. § 4A1.2(d)(2)(A) is the applicable section here because Eubanks' juvenile sentence exceeded sixty days, and under that provision the clock starts when a defendant is released from confinement. *See* U.S.S.G. § 4A1.2(d)(2)(A). Because Eubanks was released from confinement in June 2004 for the theft of firearm and armed robbery charges, and the instant offenses occurred in July 2007, the offenses fall within the five-year statute of limitations. Consequently, the district court correctly calculated Eubanks' criminal history.

### E.   The Errors Were Not Harmless

As detailed above, the district court improperly applied the guidelines in calculating Eubanks' sentence. But the government contends that any errors were harmless. "To prove harmless error, the government must be able to show that the guidelines error did not affect the district court's selection of the sentence imposed." *United*

*States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) (internal quotations omitted).

In determining whether the above errors were harmless, we must first establish whether the district court's guideline sentence fell within the properly calculated guideline range. Counts 12 and 14 both start with a base offense level of 20. Count 12 should be enhanced three levels for the victim's injuries and two levels for restraint, for a total offense level of 25. Count 14 should be increased six levels for otherwise using a firearm, two levels for bodily injury, and two levels for restraint. This leaves a total offense level of 30 for Count 14.

Because there are multiple counts we must determine the combined offense level under U.S.S.G. § 3D1.4. The combined offense levels for each group are 30 (Count 14), 25 (Count 12), 26 (Count 8), and 25 (Count 10). *See* U.S.S.G. § 1B1.2(c), comment (n.3) (counting stipulated offenses in plea agreements in computing the combined offense level). Pursuant to the unit analysis in U.S.S.G. § 3D1.4, Count 14 is assigned one unit as the group with the highest offense; Count 8 is given one unit because it is within four levels of the group with the highest offense level (i.e., Count 14); one-half units are given for both Counts 12 and 10 because they are more than four levels below the highest offense level. *See* U.S.S.G. § 3D1.4(a) and (b). Since there is a total of three units, three offense levels are added to the group with the highest score (again, Count 14). So after conducting the appropriate unit analysis, the offense level for all conduct is 33. After subtracting three levels for acceptance of responsibil-

ity, *see* U.S.S.G. § 3E1.1, Eubanks' combined offense level is 30.

Offense level 30 and criminal history category V yields a guideline range of 151-188 months. The district court's 192-month guideline sentence is thus outside the applicable range—albeit only by four months. And while the district court specifically stated that it would have given the same sentence even if it found restraint rather than abduction in Counts 12 and 14, this did not account for the erroneous four-level enhancement for otherwise using a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(D) in Count 12. Moreover, the district court did not provide any reason for giving a non-guideline sentence. *See United States v. Carter*, 538 F.3d 784, 789 (7th Cir. 2008) ("If the sentence imposed is outside the guidelines range, the district court must provide a justification that explains and supports the magnitude of the variance.") Therefore, because the district court's errors in calculating the guideline range may have affected the sentence imposed, the above errors are not harmless.

## III. CONCLUSION

For the reasons discussed above, we VACATE the sentence and REMAND for resentencing consistent with this opinion.