Opinion by Chief Judge KOZINSKI; Concurrence by Judge KLEINFELD.
OPINION
KOZINSKI, Chief Judge:
What does it mean to destroy land?
Facts
A jury convicted Clyde DeWayne Holmes, Jr., a volunteer fireman, on six counts of setting public lands afire, in violation of 18 U.S.C. § 1855. He burned about a thousand acres owned by the Bureau of Land Management (BLM) that were covered by sagebrush and other vegetation. At sentencing, Holmes argued that his offense “did not include the destruction or attempted destruction of a place of public use,” which carries a base offense level of 24. See U.S.S.G. § 2K1.4(a)(l). The district court rejected this argument and sentenced Holmes to 72 months. We review the district court’s interpretation of the Guidelines de novo, its application of the Guidelines to the facts for abuse of discretion and its factual findings for clear error. See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir.2006).
1. Holmes argues that he didn’t destroy or attempt to destroy a place of public use, but he waived the issue by conceding it below: “Yeah, and like I said, I don’t disagree that it’s a place of public use. Obviously it’s open to the public but it just seems that ... [the arson] endangered a place of public use.... ” We decline to address it. See Fed. Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 509 (9th Cir.1990).
2. Holmes argues that the burning of grass and sagebrush didn’t destroy the land because there’s no evidence “that a member of the public was denied usage [sic] of the land for some higher cultural or recreational purpose,” or “that the land *661 itself was ... rendered unusable into the indeterminate future.” Rather, the land’s “ability and use was only limited for a short period of time.”
The Guidelines don’t explain what it means to destroy something, but we have a pretty good idea from common usage. Drop a Ming vase, and it’s kaput. Spill some milk on your computer, and you’ll have something to cry over. And Rover will surely destroy your Jimmy Choos if you give him half a chance. But it’s hard to think of examples where land is destroyed. A large explosion might dissipate some of the dirt and leave a crater; dumping toxic waste might render land uninhabitable for a long while. Yet nothing is ever truly destroyed; it merely changes form. E — mc[2] and all that. The question is, when is the change in form sufficient for us to refer to it as destruction?
To begin with, the damage needn’t be total or irreversible. Most things that are destroyed can be made whole by the application of sufficient effort and resources. For example, a crashed car can often be restored to “like new” condition. Nevertheless, we think of a car as “totaled” when the cost of repair exceeds its pre-accident market value. Even if the owner decides to rebuild anyway — perhaps as a hobby or for sentimental reasons — we’d still consider the car to have been destroyed.
Destruction also need not eliminate every possible use of the object. Cf. United States v. Causby, 328 U.S. 256, 258-59, 262, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) (government’s destruction of ability to use land to raise chickens held to be a taking, even though “enjoyment and use of the land [was] not completely destroyed”). A bricked cell phone might make a nifty paper-weight, but it’s useless to call your sweetheart. This is particularly true of land, which will generally support many potential uses. For example, land rendered unfit for human habitation by toxic waste may serve as a swell ordnance target range; nevertheless, we reckon the land’s been destroyed.
While the line between damage and destruction is not a precise one, we consider something to have been destroyed if it is rendered incapable of being used for one or more of its principal purposes, and can’t be restored swiftly and relatively cheaply. In the case of land, we consider it destroyed if its aesthetic, environmental, recreational, economic or cultural uses have been eliminated for a significant period of time, generally meaning more than a year. Cf. Sierra Club v. Morton, 405 U.S. 727, 734, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (“Aesthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society...”); Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 184, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (harm to “recreational, aesthetic, and economic interests” is a cognizable injury for purposes of standing); 16 U.S.C. § 470cc(c) (recognizing that archeological sites may have religious or cultural importance to Indian tribes).
Finally, when we talk about the destruction of land, we don’t just mean the earth’s crust. We also refer to the vegetative growth, bodies of water, rock formations and fossils that are found on the earth. See State v. Coffee, 97 Idaho 905, 556 P.2d 1185, 1193 (1976) (“Normally, ‘land’ means a property right and includes all things physical upon the earth, such as soil, trees, and grass.”). Burning a forest destroys the land, not just the trees. Vegetation can grow back quickly after a fire, or it may take years or decades. Cf. Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 545, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) (“Environmental injury, by its nature, can seldom be adequately remedied *662 by money damages and is often permanent or at least of long duration, ie., irreparable.”). As a general matter, if land covered in vegetation is likely to return to its prior condition without human intervention within a year, we would not consider the land to have been destroyed. But if it will likely take substantially more than a year for the vegetation to recover, or require significant human intervention, then the land is deemed to have been destroyed.
3. The district court correctly interpreted section 2K1.4(a)(l) to require that the land here suffer more than short-term damage, but less than complete obliteration: “[This is] not the situation where there’s a wildfire and then the next year everything is back just the way it was. It sometimes takes decades for the land to restore itself and sometimes it never happens because of cheatgrass infestation which usually follows right on the heels of a wildfire.” If this is true, then the land would clearly have been destroyed under the principles outlined above. But the learned district judge didn’t state the basis for his finding, and we see no evidence in the record to support it. The court went on to say: “I deal with these kinds of cases involving impact on the environment all the time. There’s a macrobiotic crust that is devastated by the wildfire. There’s just — there’s a lot implicate [sic] — that you can’t see. The grass may be growing but it’s not the same.” Yet nowhere in the record was there any evidence that the fires caused any damage to the macrobiotic crust or any cheatgrass infestation. The government did introduce some potentially relevant evidence, including a statement of loss of wildlife habitat and shooting areas and restitution figures for the BLM land. The district court didn’t mention this evidence when it applied the higher base offense level, and we don’t see an obvious connection between the evidence and the district court’s decision.
On appeal, the government argues in support of the district court’s theory that the fires destroyed the macrobiotic crust, but that can’t make up for its earlier failure to present evidence to that effect. This isn’t the sort of common knowledge district judges may rely on in sending someone to prison. Rather, the extent of damage to BLM land is a factual determination as to which there needs to be evidence, quite possibly from experts. The government presented no evidence to support the district court’s findings, and Holmes was not given the opportunity to present evidence on how his fires affected the BLM land.
For similar reasons, we can’t conclude that Holmes only “endangered” the land, which would result in a lower base offense level than if he destroyed it. See U.S.S.G. § 2K1.4(a)(2). Endangering means putting the property at risk but resulting in no actual damage, or damage that is less than destruction. Cf. Price v. U.S. Navy, 39 F.3d 1011, 1019 (9th Cir.1994). If the district court on remand finds that the damage to the land doesn’t amount to destruction, then it will probably determine that Holmes endangered the land.
We vacate Holmes’s sentence and remand so that the district court can impose a sentence that isn’t infected by procedural error. See United States v. Carty, 520 F.3d 984, 993 (9th Cir.2008) (en banc).
REVERSED and REMANDED.

. At the time, it embraced the following: 18 U.S.C. §§ 32(a), (b), 33, 37, 81, 112(a), 844(f), (h) (only in the case of an offense committed prior to November 18, 1988), (i), 970(a), 1153, 1362, 1363, 1364, 1855, 1992(a)(1), (a)(2), (a)(4), 2275, 2280, 2281, 2282A, 2282B, 2291, 2332a, 2332f; 49 U.S.C. § 60123(b).