In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3236

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

NAPOLEON FOSTER,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:08-cr-00880-1 — **Robert W. Gettleman**, *Judge*.

ARGUED JULY 5, 2018 — DECIDED AUGUST 31, 2018

Before WOOD, *Chief Judge*, and SCUDDER and ST. EVE,
*Circuit Judges*.

SCUDDER, *Circuit Judge*. For his part in the armed robbery
of a credit union, Napoleon Foster was convicted of robbing
a financial institution, using a firearm during the robbery, and
possessing a firearm as a felon. The district court sentenced
Foster as an armed career criminal but later vacated the sen-
tence because one of his prior convictions no longer qualified
as a predicate offense. On appeal from resentencing, Foster

argues that the district court erred in its determination of the advisory guidelines range applicable to the robbery offense by imposing an enhancement under U.S.S.G. § 2B3.1(b)(2)(F) for his coconspirator's threat to detonate a bomb during the robbery. Relying on the language used by the Sentencing Commission in Application Note 4 to U.S.S.G. § 2K2.4, he contends that the sentence he received under 18 U.S.C. § 924(c) accounts for the bomb threat and thus the threat cannot also enhance the advisory range for the robbery conviction. We agree and therefore vacate Foster's sentence and remand for resentencing.

## I

In January 2006, Foster hatched a plan with Asia Hill to rob a credit union in Riverdale, Illinois. Hill then recruited Charles Anderson, and the trio met on the day of the robbery to review the plan. Foster supplied Hill and Anderson with guns to use during the robbery, drove them to the credit union, and waited nearby while they went inside. During the robbery, Hill directed a teller to empty the cash drawers and threatened to shoot her if she pressed any alarms. Meanwhile, Anderson held another employee at gunpoint and ordered him to open and empty the vault. Before leaving, Anderson also threatened to detonate a bomb: "Nobody move for ten minutes. I got a bomb and I'll blow this place up." Anderson and Hill made off with approximately $250,000 and met Foster a short distance from the credit union. The three later split the proceeds, with Foster pocketing around $100,000.

A grand jury indicted Foster for committing an armed robbery of the credit union, 18 U.S.C. § 2113(a), (d); using a firearm during a crime of violence, *id.* § 924(c)(1)(A)(i); and possessing a firearm as a felon, *id.* § 922(g)(1). The case

proceeded to trial, and a jury found Foster guilty on all counts.

The district court sentenced Foster to 284 months' imprisonment. We upheld the convictions and sentence on direct appeal. *United States v. Foster*, 652 F.3d 776 (7th Cir. 2011). Invoking 28 U.S.C. § 2255, Foster later moved to vacate his sentence, contending that resentencing was warranted because, in the wake of *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015), his prior conviction for burglary no longer qualified as a predicate offense under the Armed Career Criminal Act. Once the Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016), the government conceded the point, and the district court ordered resentencing.

Prior to resentencing, the Probation Office revised its computation of the advisory guidelines range. The revised range reflected a two-level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F) based on both Hill's threat to shoot the teller and Anderson's threat to detonate a bomb. Foster objected, arguing that Application Note 4 to U.S.S.G. § 2K2.4 prohibited any death-threat enhancement where, as here, a defendant also received a sentence for committing a firearms offense under 18 U.S.C. § 924(c).

Pointing to our decision in *United States v. White*, 222 F.3d 363 (7th Cir. 2000), the district court determined the two-level enhancement was authorized as a legal matter. The sentencing judge also determined the enhancement was warranted on the facts, as Foster effectively ordered Anderson and Hill to "terrorize this bank" and thus could have foreseen a death threat being conveyed during the robbery. The resulting advisory guidelines range was 97 to

121 months for the robbery and felon-in-possession counts, reflecting a total offense level of 28 and a criminal history category of III. Without the death-threat enhancement, the total offense level would have been 26, which, in turn, would have reduced the advisory range to 78 to 97 months. The district court imposed concurrent sentences of 121 months for the robbery and felon-in-possession convictions to be followed by the 60-month mandatory consecutive term for the § 924(c) conviction, yielding a total sentence of 181 months' imprisonment.

## II

### A

Foster renews his challenge to the two-level death-threat enhancement he received pursuant to U.S.S.G. § 2B3.1(b)(2)(F). In doing so, he focuses on whether Anderson's threat to detonate a bomb during the robbery supported the enhancement because, as the government concedes, our decision in *United States v. Katalinic* prevents Hill's threat to shoot the teller with a gun from serving as the basis for the enhancement. See 510 F.3d 744, 748 (7th Cir. 2007) ("We choose to adopt the rule used by our sister circuits that death threats related to the firearm forming the basis of the § 924(c) sentence cannot be double counted by increasing the base offense level for the underlying crime."). Foster does not contend that the bomb threat somehow fell short of constituting a death threat. His point is a legal one: relying on Application Note 4 to U.S.S.G. § 2K2.4, he contends that the district court was not permitted to impose the enhancement "for any weapon- or explosive-related conduct—be it part of

the underlying offense or relevant conduct—when that defendant is also convicted under § 924(c)."

We approach an interpretation of the Sentencing Guidelines as we would a question of statutory interpretation—by starting with the text of the guidelines. See *United States v. Vizcarra*, 668 F.3d 516, 520 (7th Cir. 2012). Here, no particular guideline answers the question presented. The source of the two-level death-threat enhancement is U.S.S.G. § 2B3.1(b)(2)(F), a subsection of the offense guideline applicable to Foster's armed robbery conviction under 18 U.S.C. § 2113(a), (d). But neither the text of nor commentary to § 2B3.1 suggests a limit on imposing the enhancement in conjunction with a sentence under § 924(c). The same is true of the text of U.S.S.G. § 2K2.4, the guideline applicable to violations of § 924(c).

The controlling guidance comes from the Sentencing Commission's commentary to § 2K2.4, and, more specifically, Application Note 4. As the Supreme Court has explained, we treat such commentary as "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). So, too, has the Court recognized that revisions to the guidelines can occur through amendments to the commentary, including in response to a "prior judicial construction[] of a particular guideline." *Id.* at 46.

By its terms, Application Note 4 to § 2K2.4 provides:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

The language of Application Note 4 precluded the district court's imposition of the two-level enhancement challenged by Foster. The note starts with an instruction not to apply "any specific offense characteristic for possession, brandishing, use, or discharge of an explosive … when determining the sentence for the underlying offense"—here, armed robbery of a financial institution. By its terms, the two-level death-threat enhancement in § 2B3.1(b)(2)(F) is a "specific offense characteristic" of a robbery.

Furthermore, during the course of the armed robbery, Anderson announced that he had a "bomb" and referred to the bomb as part of telling those present not to "move for ten minutes," lest he "blow this place up." Anyone present surely thought Anderson was using an explosive to convey a death threat. On these facts, Anderson's statements sufficed to constitute "use" of an "explosive" within the meaning of Application Note 4.

The second sentence of Application Note 4 proves this construction. That sentence turns the focus to whether the conduct giving rise to "any explosive or weapon enhancement" constitutes relevant conduct within the meaning of § 1B1.3. Because Anderson's bomb threat was made during the robbery to further his and Hill's escape and, as the district court found, was "reasonably foreseeable" to Foster, it was "relevant conduct" to the robbery. See U.S.S.G. § 1B1.3(a)(1)(B).

The text of Application Note 4 makes plain the consequence of our reading: Foster's § 924(c) sentence already "accounts for any explosive or weapon enhancement" for the underlying robbery, including any enhancement that would apply based on the relevant conduct of Anderson's bomb threat. Accordingly, no enhancement for the bomb threat could be applied to the offense level for purposes of computing the advisory range applicable to Foster's armed robbery conviction.

B

The path that led the Commission to Application Note 4 as it stands today reinforces our conclusion. In 2000, the Commission revised the note, previously located at Application Note 2 to U.S.S.G. § 2K2.4. (We refer to the note as Application Note 4 throughout this opinion and point out when we are discussing the earlier version.) The Commission explained that it "intended [the 2000 amendment] to avoid the duplicative punishment that results when sentences are increased under both the statutes and the guidelines for substantially the same harm" and to "conform application of guideline weapon enhancements with general guideline principles." U.S.S.G. Supp. to App. C, Amend. 599 (2000).

Comparing the language of the pre-amendment application note and the post-amendment application note is instructive:

| Pre-Amendment U.S.S.G. § 2K2.4 n.2 | Post-Amendment U.S.S.G. § 2K2.4 n.4 |
|---|---|
| Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (e.g. § 2B3.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense. | If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense. A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). |

The additional language in the revised application note prohibits "*any* explosive or weapon enhancement" based on relevant conduct where a defendant also receives a sentence under § 924(c). U.S.S.G. § 2K2.4 n.4 (emphasis added). The

amended language broadens the inquiry under the application note to all relevant conduct: if the enhancement is based on relevant conduct, it is precluded. The amended note contains no indication that the Commission intended to reach only those enhancements imposed for the same conduct underlying the § 924(c) conviction.

In issuing the amendment, the Commission identified a Ninth Circuit case, *United States v. Willett*, 90 F.3d 404 (9th Cir. 1996), as an example of a misinterpretation of the application note. See U.S.S.G. Supp. to App. C, Amend. 599. Pointing to *Willett*, the Commission explained, "offenders have received both the mandated [§ 924(c)] penalty and a guideline weapon enhancement in circumstances in which the guidelines generally would require a single weapon enhancement." *Id.* In *Willett*, the Ninth Circuit concluded that an enhancement for possessing a knife and silencer was permitted under the application note because possessing those weapons in addition to a gun "poses a greater risk," so the enhancement "was necessary to reflect fully the wrongfulness of the defendant's conduct." 90 F.3d at 408. The Ninth Circuit has since concluded that *Willett* is no longer good law in light of the amendment to the application note. *United States v. Aquino*, 242 F.3d 859, 864 (9th Cir. 2001) ("It is now beyond question that where a defendant is convicted of a § 924(c) violation, his sentence may not be enhanced at all for any conduct for which the defendant is accountable within the scope of relevant conduct under U.S.S.G. § 1B1.3.").

C

The government presses a different construction of Application Note 4. It argues that a death-threat enhancement triggered by conduct separate from the conduct punished by

§ 924(c) is permissible. It urges us to uphold the district court's imposition of the death-threat enhancement here by concluding that "[n]either Guideline § 2K2.4 nor its application note expressly precludes a court from applying an enhancement for a threat of death where the threat is not directly related to the firearm for which [the] defendant received a mandatory sentence under § 924(c)."

But the government's proposed distinction between conduct related to the § 924(c) offense and unrelated conduct cannot be squared with the text of the amended note, which broadly prohibits "*any* explosive or weapons enhancement" based on relevant conduct where a defendant also receives a sentence under § 924(c). U.S.S.G. § 2K2.4 n.4 (emphasis added). The breadth of the Commission's language in the amendment does not allow for the limitation proposed by the government.

Nor does the government have an answer to the Sentencing Commission's stated objective of amending Application Note 4 to change the outcome of cases like *Willett*. Recall that *Willett* did not involve any real bombs or other explosive devices. To the contrary, the offense conduct that led to the imposition of a two-level enhancement for the possession of a dangerous weapon there was the defendant's possession of a silencer and a knife. See *Willett*, 90 F.3d at 408. If the government's position were correct, we would have expected the Commission to leave the outcome of *Willett* alone, as Charles Willett's possession of the knife—which was not related to his § 924(c) conviction—could have been seen as independently sufficing to warrant the two-level enhancement. But the Commission chose a different course, making plain that its 2000 amendment was designed to

preclude such enhancements in future cases. The government's reading of Application Note 4 as limited to the firearm (or explosive) underlying a defendant's § 924(c) conviction cannot be squared with the broad and expanded limitations intended by the Commission through its 2000 amendment. Turning back to Foster's case, Application Note 4 and its commentary require us to decline the government's invitation to distinguish between threats "directly related" to the firearm underlying his § 924(c) conviction and threats unrelated to the firearm in the § 924(c) conviction.

The government also argues that the Commission's limitation extends only to enhancements for the "*possession, brandishing, use,* or *discharge of* an explosive or firearm." U.S.S.G. § 2K2.4 n.4 (emphasis added). Quick to concede that Anderson and Hill's use of guns during the robbery cannot provide the basis for a death-threat enhancement to Foster's sentence—as any other conclusion would run afoul of our conclusion in *Katalinic*—the government contends that nothing about the offense conduct here involved the "use" of any "explosive." Yes, Anderson conveyed a death threat by warning that he had a bomb and would blow up the credit union if anyone moved, but that conduct, the government's reasoning runs, does not entail the use of any explosive, just a reference to one.

The government roots part of its argument in the history of Application Note 4. Prior to the amendment, the application note specifically listed the enhancement for making a death threat, § 2B3.1(b)(2)(F), as among the enhancements for possession, use, or discharge of an explosive or firearm. The 2000 amendment removed this reference, leading the govern-

ment to contend that "any explosive or weapon enhancement" in the amended note no longer encompasses every death-threat enhancement.

We remain unpersuaded that the offense conduct here did not involve the "use" of an "explosive." As a preliminary matter, our decision in *Katalinic* precludes the argument that the removal of the application note's specific reference to § 2B3.1(b)(2)(A)–(F) means that "any explosive or weapon enhancement" no longer encompasses a death threat. See 510 F.3d at 747 (discussing the amendment as it related to death-threat enhancements and concluding "[t]he Commission was presumably aware of the caselaw prohibiting death-threat adjustments in this context and tacitly approved the interpretation by not criticizing it"). And for good reason: we know of nothing suggesting that the Sentencing Commission intended to narrow (and not broaden) the reach of the limitation found in Application Note 4.

Moreover, the government's reading invites an absurd result. Take, for example, an armed robbery like the one that occurred here but where Anderson or Hill possessed a real bomb. On the government's reading, there unquestionably would be a use of an explosive and thus the limitation in Application Note 4 would prevent imposition of the death-threat enhancement in § 2B3.1(b)(2)(F). It makes little sense to permit the enhancement here, where nobody had a bomb but referred to one as part of leveling a death threat, but not where the offenders went to the added—and more blameworthy—effort of acquiring a real bomb and then using it during a robbery.

Consider another example. Application Note 4 makes plain (in a paragraph just under the one at issue here) that, in circumstances where a defendant is convicted of a drug offense and a § 924(c) violation, the drug sentence cannot be enhanced for any use of violence or credible threat to use violence. The limitation applies broadly, requiring no nexus to the § 924(c) offense conduct. It is incoherent to conclude that the Commission intended to foreclose altogether threat enhancements in drug cases but to permit them in robbery cases so long as the facts show that the threat in a robbery case did not involve the same firearm or explosive underlying the § 924(c) offense. The better conclusion is that the Commission intended Application Note 4 to apply broadly, including where, as here, application of the relevant conduct rule shows that the threat to blow up the credit union occurred during the course of the armed robbery.

## III

That would be the end of this appeal if we were writing from a blank slate. Not so, though, and far from it. In several prior cases we have encountered Application Note 4 and suggested different interpretations—some consistent with each other and others not. The time has come to land on a unified position. Before issuing this opinion, we circulated it to the full court under Circuit Rule 40(e). No judge in active service requested to hear the case *en banc*.

The beginning point is our 2000 decision in *United States v. White*, 222 F.3d 363 (7th Cir. 2000) (*White I*). Rodney White robbed a bank using a gun and a fake bomb. A conviction under § 924(c) followed, and, akin to Foster here, White received a two-level enhancement to his robbery sentence for using a fake bomb. *Id.* at 372–73. He challenged the enhancement as

impermissible double counting, citing U.S.S.G. § 2K2.4 n.2 (1998), the earlier version of the application note that prohibited applying "any specific offense characteristic for the possession, use, or discharge of an explosive or firearm" for the underlying offense if the defendant also was convicted under § 924(c). *Id.* at 373 & n.4. We concluded that a defendant like White could receive both a § 924(c) sentence and a sentencing enhancement as long as they were imposed for "different underlying conduct." *Id.* at 373. We reasoned that using a fake bomb was not the same conduct as using a gun: they are separate "offenses" under § 924(c) that carry substantially different penalties. *Id.* at 375. Tracking the Ninth Circuit's reasoning in *Willett*, we explained that there was a difference in the degree and kind of harm posed by a bomb versus a gun. *Id.* Thus, White had not been punished for the bomb "to the extent Congress intended," and the district court was free to enhance the robbery sentence for that conduct. *Id.*

We decided *White I* before the Sentencing Commission amended Application Note 4. The Commission's specific reference to *Willett* as an outcome the amendment was intended to avoid was significant because there, as in *White I*, the enhancement was based on at least one weapon (a knife) unrelated to the conduct underlying the § 924(c) conviction. On this understanding, we later agreed with White that he was eligible for a sentence reduction based on the Commission's 2000 amendment:

> Because White's use of the fake bomb was relevant conduct to the underlying bank robbery offense, *see* U.S.S.G. § 1B1.3(a)(1)(A), the § 924(c) conviction "account[ed] for" the possibility of an upward adjustment under § 2B3.1(b)(2)(E).

> Had the amendment been in place at the time of White's sentencing imposing the upward adjustment would have been forbidden.

*United States v. White* (*White II*), 309 F. App'x 7, 9 (7th Cir. 2009).

*White II* supports Foster's contention that the district court erred when imposing an enhancement to his robbery sentence for the bomb threat. In clear and precise terms, we recognized that the amendment to the application note abrogated the distinction made in *White I* between enhancements based on the same weapon and conduct underlying the § 924(c) conviction, and enhancements based on different underlying conduct. See *id.* Just as Application Note 4 forbids an enhancement for using a fake bomb because it is already taken into account by the § 924(c) conviction, an enhancement for making a bomb threat—another "use" of a bomb—would be similarly prohibited.

This analysis is clouded, however, by three of our decisions issued after the 2000 amendment. In those decisions, we recognized and reinforced the distinction made in *White I* between enhancements for the same weapon and conduct underlying a § 924(c) conviction and enhancements for different underlying conduct without directly addressing whether that division withstands the amendment to Application Note 4.

In *Katalinic*, we held that a death-threat enhancement cannot be imposed for "death threats relating to the firearm forming the basis of the § 924(c) sentence." 510 F.3d at 748. Our conclusion reflected an interpretation of the amended application note and reliance on *White I*'s distinction between enhancements arising from § 924(c) offense conduct and those

reflecting conduct unrelated to the use of a firearm. See *id.* at 747 (describing *White I* as permitting a weapons-related enhancement to a robbery sentence because the use of a bomb was "different underlying conduct" than the conduct leading to a § 924(c) firearms conviction).

In a subsequent nonprecedential decision, we remarked that *Katalinic* had "reaffirmed" *White I* after the 2000 amendment to Application Note 4. *United States v. Moses*, 284 F. App'x 361, 363 (7th Cir. 2008). But we did not decide in *Moses* whether the amended note prohibited an increase to a robbery sentence for using a fake bomb when the defendant already had a § 924(c) conviction for using a firearm during the same robbery. *Id.* Instead, we upheld the sentence in question because the district court had alternatively justified it under the statutory sentencing factors. *Id*. Most recently, in *United States v. Eubanks*, 593 F.3d 645, 649–50 (7th Cir. 2010), we employed *White I*'s framework to assess whether an enhancement for using a B.B. gun to pistol whip a victim during a robbery was permitted by the application note. We concluded that the enhancement could not be applied because the defendant's § 924(c) conviction for a firearm accounted for *all* of the guns (including the B.B. gun) he and his codefendants used during a robbery. *Id.* at 650.

So, although we have cited *White I* favorably in a few subsequent decisions, their holdings did not depend on its continued validity. *Moses* was able to avoid the question about the scope of Application Note 4. *Katalinic* reflected a straightforward conclusion that enhancements for death threats related to the firearm underlying the § 924(c) conviction are prohibited—an outcome observed to be consistent with *White I*'s focus on whether the enhancement in question reflected the

same or different conduct vis-à-vis the § 924(c) offense conduct. And *Eubanks* relied on dicta in *White I* about treating all firearms the same more than it relied on *White I*'s holding about treating bombs and guns differently.

We take this opportunity to harmonize our caselaw. To the extent that *White I* drew a line between enhancements based on the same and different underlying conduct, that distinction does not survive the Commission's amendment to Application Note 4 where the conduct is relevant conduct. But we need not overturn *Katalinic*, *Moses*, and *Eubanks* because, although they invoke *White I* approvingly, none depend on *White I*'s pre-amendment reasoning.

Our conclusion flows from the language the Commission used in amending Application Note 4. It instructs that a district court is not permitted to impose any explosive or weapon enhancement, whether it is part of the underlying offense or relevant conduct, when a defendant is also sentenced under § 924(c). In so holding, our decision today in no way precludes consideration of that conduct at sentencing as a factor under 18 U.S.C. § 3553(a).

## IV

Accordingly, the district court should not have applied the enhancement for making a death threat to Foster's sentence for the underlying robbery count because Application Note 4 instructs that the threat was already accounted for by his § 924(c) sentence. We therefore VACATE Foster's sentence and REMAND for resentencing.