NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 3, 2020
Decided March 18, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2095

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:18-cr-00286-001 |
| NOLAN BREWER, *Defendant-Appellant*. | Tanya Walton Pratt, *Judge*. |

**O R D E R**

Nolan Brewer and his then-wife spray painted swastikas and iron crosses onto a synagogue's dumpster enclosure. Next to it, he set fire to an area of grass on the property using a homemade mixture of gasoline and styrofoam. Brewer pleaded guilty to conspiring to injure, oppress, threaten, and intimidate the synagogue's congregants because they were Jewish, in violation of their right to hold property free of racial discrimination. *See* 18 U.S.C. § 241. On appeal, he challenges the district court's application of a base offense level of 20 under the arson sentencing guideline, *see* U.S.S.G. § 2K1.4(a)(2)(C), because he "endangered … a place of public use." Because

the district court did not clearly err in concluding that the record evidence supported the application of this guideline, we affirm.

In July 2018, Brewer and his then-wife set out to terrorize and intimidate the Jewish community in Carmel, Indiana. First, they spray painted swastikas and iron crosses onto a dumpster enclosure that sat at the edge of a synagogue's property, set off by a paved service drive. The couple then decided to illuminate the graffiti with a fire. On two patches of grass (directly next to and a few feet away from the enclosure) they dumped a mixture of gasoline and melted styrofoam (homemade "napalm"). They then set the mixture ablaze. The small patches of grass in contact with the mixture burned, and the dumpster enclosure was charred. The couple also had with them, but did not use, homemade "bombs" (foil-filled beverage bottles), which, they thought, would explode from pressure once drain cleaner was poured inside. They also had pieces of spark plugs, which they believed could be thrown at and shatter a glass window.

About two weeks later, FBI agents—after receiving a tip from one of Brewer's co-workers—stopped Brewer, searched his car, and interviewed him. In his car, the agents found spray paint, bandanas, rubber gloves, ceramic spark plug parts, beverage bottles containing pieces of foil, and two bottles of drain cleaner. During the interview, Brewer told the FBI that his wife had communicated online with a man named Peter, who selected the synagogue and told them what to do. Peter instructed them to bring the spark plugs to "bust the windows … to try and get inside." Peter also proposed that the couple place a drain-cleaner "bomb" in the synagogue and "toss the napalm on top of it … and then light it and run" so that when the "bomb" went off, "it would set the napalm everywhere."

Brewer, however, denied that he ever intended to follow through with Peter's plans. Brewer told the FBI that on their way to the synagogue, he and his wife agreed that they were not going to "actually burn the place down … no, of course not." Brewer stated he did not want to go into the synagogue because that would involve breaking and entering and "destroying the actual internal structure rather than just having something they could wash up." He and his wife wanted to "get" the synagogue's back wall, but they were deterred by its lights and cameras, so they "got the dumpster instead." The purpose of burning the "napalm" was to create a lighting effect in front of the spray-painted swastikas "[r]ather than … burning anything."

The government charged Brewer under 18 U.S.C. § 241, which criminalizes conspiring to "threaten" or "intimidate" any person "in the free exercise" of "any right or privilege secured" under the Constitution.

In the presentence investigation report, which recommended a guideline range of 51–63 months (based on a total offense level of 24 and criminal history category of I), the key factor was the base offense level. An offense under 18 U.S.C. § 241 involving two participants corresponds to a base offense level of 12, U.S.S.G. § 2H1.1(a)(2), unless the offense level applicable to "any underlying offense" is higher, *id.* § 2H1.1(a)(1). Indeed, the PSR recommended a base offense level of 24, as called for under the arson guideline, U.S.S.G. § 2K1.4(a)(1)(B), when the underlying offense involves "the destruction or attempted destruction of … a place of public use." *Id.* The PSR then applied a three-level enhancement because the offense was a hate crime, U.S.S.G. § 3A1.1(a), and deducted three levels for acceptance of responsibility, *id.* § 3E1.1.

At a joint change-of-plea and sentencing hearing, Brewer pleaded guilty without a plea agreement, and the parties disputed whether § 2K1.4(a)(1)(B) applied to Brewer's offense. The government insisted that Brewer's conduct involved the "attempted destruction" of a place of public use based on Brewer and his wife's plan to break into the synagogue and use the drain-cleaner "bombs" to spread the "napalm." Brewer, as he had maintained during his FBI interview, denied that he ever intended to break into or set fire to the synagogue.

The district court accepted neither position. Rather than rely on § 2K1.4(a)(1)(B) for "attempted destruction" of the synagogue, the court invoked an alternative provision under the guideline, § 2K1.4(a)(2)(C)—carrying a base offense level of 20—for an offense that "endangered … a place of public use." The court found that the synagogue was a place of public use, that Brewer and his wife had set fire to its campus, and therefore "[t]he fire in the grass [had] endangered the public place." In the court's view, substantial evidence—including the couple's original (but abandoned) plan and the dangerous unused items they carried with them—showed that Brewer and his wife conspired "to cause some type of destruction or endangerment" to the synagogue. The offense level of 20 yielded a guideline range of 33–41 months in prison. The court settled upon a 36-month sentence followed by two years of supervised release and a restitution order of $700 to be paid to the synagogue.

On appeal, Brewer argues only that the district court erred in applying U.S.S.G. § 2K1.4(a)(2)(C) for "endanger[ing] … a place of public use." He disputes that a place of

public use was "actually endangered." Instead, he claims his was merely a "small fire," set on the far side of the dumpster, which "burned out quickly without spreading" and never posed any "actual danger to the synagogue." He maintains that the guideline does not cover the threat of minor damage; it encompasses only "actual" endangerment, which he defines as the threat of total destruction or very serious harm. Lastly, he faults the court for relying on the couple's "original" but abandoned plan to cause more damage than what they actually carried out.

We approach an interpretation of the Sentencing Guidelines in the same manner as a question of statutory interpretation—by beginning with the text. *United States v. Foster*, 902 F.3d 654, 657 (7th Cir. 2018). Section 2K1.4(a)(2)(C) applies "if the offense … endangered … a place of public use." A "place of public use" includes "parts of any building, land, street, waterway, or other location that are accessible or open to members of the public," such as any religious place open to the public. U.S.S.G. § 2K1.4 cmt. n.1; 18 U.S.C. § 2332f(e)(6). No one disputes that the synagogue is a place of public use. The district court went further and considered the synagogue's entire "campus" as the place of public use, a point that Brewer does not challenge. Indeed, the district court found "[t]he location where the defendant and his wife did the destruction and set their fires was on the campus of the synagogue…." The guideline does not, however, define "endangered." Among the circuits, the term has been addressed only by the Ninth Circuit, which defines it as "putting the property at risk but resulting in no actual damage, or damage that is less than destruction." *United States v. Holmes*, 646 F.3d 659, 662 (9th Cir. 2011).

We review the district court's underlying factual findings for clear error, *see United States v. Flores-Olague*, 717 F.3d 526, 530 (7th Cir. 2013), and the court here did not clearly err in finding that setting fire to "napalm" "on the campus of the synagogue" endangered a public place. When asked to clarify the ruling during the sentencing hearing, the district court noted, "This says if the offense endangered. … The fire in the grass endangered the public place." The court reasonably could conclude that the fire by its very nature put the synagogue's campus at risk (specifically the grass and exterior areas, which Brewer does not contest are part of the place of public use), even if it caused no actual damage. *See Holmes*, 646 F.3d at 662. Brewer dumped an accelerant on open grass next to trees on the synagogue's property and set the accelerant on fire. The resulting fire was strong enough to scorch the dumpster enclosure and completely burn the patches of grass. True, the fire did not spread and did not damage the synagogue, but setting fire to a highly flammable substance on the synagogue's exterior property is enough to support the district court's conclusion that "[t]he fire in the grass

endangered the public place." And that conclusion does not leave us with a "definite and firm conviction that a mistake has been made." *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008) (quoting *United States v. Wilson*, 502 F.3d 718, 721 (7th Cir. 2007)).

A final point of clarification: We agree with Brewer that the district court should not have evaluated § 2K1.4(a)(2)(C) based on the couple's original but abandoned plan of bringing about further destruction. But any error does not change the outcome because the court reasonably could conclude that Brewer's completed conduct alone endangered a place of public use.

AFFIRMED