# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2040
_____

United States of America,    *
                             *
          Appellee,          *    Appeal from the United States
                             *    District Court for the
     v.                      *    Eastern District of Missouri.
                             *
David Dodson,                *
                             *
          Appellant.         *

_____

Submitted:  February 10, 1997

Filed:  March 26, 1997
_____

Before BOWMAN and WOLLMAN, Circuit Judges, and BOGUE,[1] District
     Judge.
_____

WOLLMAN, Circuit Judge.


     David Dodson entered a conditional plea of guilty to armed bank
robbery, in violation of 18 U.S.C. § 2113 (a) and (d), and the use of a
firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1).
He appeals from the district court's denial of his motion to suppress
evidence and the sentence imposed by the court.  We affirm the conviction,
but remand for resentencing.

_____

[1]The HONORABLE ANDREW W. BOGUE, United States District Judge
for the District of South Dakota, sitting by designation.

**I.**

On May 11, 1995, an armed man robbed the Lindell Bank and Trust Company in St. Louis, Missouri. Witnesses described the perpetrator as a thin white male in his late teens to early twenties, with light brown or blond hair that was cut short on the sides. Witnesses recalled that he was wearing a black tank-top shirt and a black coat. One witness saw the man leave in a U-Haul rental truck that had been parked a short distance away.

On May 18, 1995, Steven McGuire, an off-duty police officer who had participated in the investigation of the bank robbery, saw a man he thought met the description of the man that had robbed the bank the week before. In particular, Officer McGuire noticed that the man was a thin white male in his early twenties, with short brown hair that was shaved on the sides and that he was wearing a black tank-top. In addition, the man was driving a Ryder rental truck one-half mile from the scene of the bank robbery. Suspecting that this man (later identified as Dodson) was the robber, McGuire followed Dodson, but later lost sight of the truck. McGuire eventually relocated the truck and saw Dodson leaving Boatmen's Bank. McGuire then found an on-duty police officer, Michael Sibels, and told Sibels of his suspicions regarding Dodson.

Sibels found the Ryder truck that McGuire had seen parked along a street and parked behind it. As he was radioing for assistance, Sibels noticed that Dodson was leaning down in the cab of the truck. When another officer, Detective Touhill, arrived on the scene, Dodson exited the truck, walked over to the officers, and asked what was going on. As Detective Touhill spoke with Dodson, Sibels walked to the cab of the truck and saw a black coat

on the seat. Upon opening the door and seeing the grip of a pistol under a bag, Sibels lifted the bag and found a 9mm pistol.

Sibels walked to the back of the truck and asked Dodson to put his hands behind his back, whereupon Dodson grabbed Sibels around the neck. A struggle ensued, and Dodson, Sibels, and Touhill fell to the ground before the officers were able to subdue Dodson. Dodson ultimately confessed to both the local police and later to the FBI that he had robbed the Lindell Bank.

Dodson was indicted on charges of armed robbery and use of a firearm during a crime of violence. After an evidentiary hearing, the district court denied Dodson's motion to suppress evidence. Dodson entered a conditional plea of guilty, reserving his right to appeal the denial of his motion to suppress and his sentence. The presentence investigation report (PSR) recommended a two-level enhancement because the struggle between Dodson and the police officers resulted in Sibels's sustaining minor injuries. The district court overruled Dodson's objection to that recommendation, imposed a two-level enhancement, and sentenced Dodson to a term of 100 months' imprisonment.

## II.

Dodson maintains that the district court erred in denying his motion to suppress the evidence seized from the rental truck, arguing that the stop was not based on reasonable suspicion. While we review the district court's findings of fact for clear error, we review de novo the district court's ultimate finding of reasonable suspicion. See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996); United States v. Porter, No. 96-3358, 1997 WL 71289, at *2 (8th Cir. Feb. 21, 1997).

We look to the totality of the circumstances, in light of the officer's experience, see United States v. Dixon, 51 F.3d 1376, 1381 (8th Cir. 1995), to determine whether the facts collectively establish that reasonable suspicion supported stopping Dodson. See United States v. Green, 52 F.3d 194, 198-99 (8th Cir. 1995). Reasonable suspicion, as described by the Supreme Court, is simply "'a particularized and objective basis' for suspecting the person stopped of criminal activity." Ornelas, 116 S. Ct. at 1661 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

The witnesses to the robbery the week earlier provided the police with a detailed description of the suspect, including not only details about the man's appearance but also details about what he was wearing and the type of vehicle he was driving. McGuire, who participated in the investigation of the robbery one week earlier and was familiar with the description of the suspect, saw a man in the vicinity of the bank robbery. After observing the man twice, once when he was parked at a stoplight and again when the man was leaving Boatmen's Bank, McGuire determined that the man fit all of the characteristics of that detailed description. In particular, McGuire noticed that the person was a thin man in his early twenties with very short light brown hair, and that he was wearing a black tank-top shirt and driving a rental truck in the vicinity of the robbery. These were all specific factors which, given McGuire's experience, collectively provided a substantial basis for McGuire's belief that the man he saw was the robbery suspect. Accordingly, the district court did not err in concluding that the stop was based upon reasonable suspicion.

Dodson also contends that the district court erred in increasing his offense level based on its finding that Sibels sustained "bodily injury" during Dodson's arrest.  We agree.

The PSR recommended a two-level increase because Dodson had inflicted injuries upon one of the arresting officers.  The report stated, "[i]n addition, a St. Louis Metropolitan police officer sustained minor injuries as he placed the defendant under arrest."  Dodson objected to this recommendation, arguing that "minor injuries" do not rise to the level of "significant injury," as required by the Guidelines.  At the sentencing hearing, the court overruled that objection, concluding that bodily injury encompassed choking.

The Guidelines provide that, "[i]f any victim sustained bodily injury, increase the offense level according to the seriousness of the injury," and that a two-level increase is mandated if the victim suffered "bodily injury."  See U.S.S.G. § 2B3.1 (b)(3)(A).  "'Bodily injury' means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1, comment. (n.1 (b)).

The district court held that "'choking' falls within the category of 'bodily injury.'"  It is not the defendant's conduct, however, which determines whether a victim has sustained bodily injury; rather, the resultant physical injury is the determining factor.  See United States v. Perkins, 89 F.3d 303, 308 (6th Cir. 1996) ("the enhancement for causing 'bodily injury' is premised upon a particular result, not the defendant's conduct").  Notwithstanding Dodson's objection to the recommended two-level

enhancement, the government did not call Officer Sibels to testify regarding the nature of his injuries or whether he had suffered any pain as a result of being choked. Thus, the only evidence, if it can be characterized as that, concerning the injuries Sibels suffered was the PSR's description of the injuries. Characterizing injuries as "minor" is not consistent with the Guidelines' definition of "bodily injury" as "significant injury." In the absence of even a minimal showing regarding the extent of injuries sustained by Sibels, the record does not support the two-level enhancement for bodily injury.[2]

The judgment of conviction is affirmed. The sentence is vacated, and the case is remanded to the district court for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]For an example of injuries that would without question constitute bodily injury within the meaning of the Guidelines definition, see <u>United States v. LeCompte</u>, No. 96-2003, slip op. at 4-5 (8th Cir. Mar. 17, 1997). We do not mean to suggest, of course, that to satisfy that definition the injuries necessarily have to be so severe as those suffered by the victim in <u>LeCompte</u>.

-6-