# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3342

_____

United States of America

*Plaintiff - Appellee*

v.

Jamin C. Fletcher

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: September 27, 2019
Filed: December 23, 2019

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Jamin C. Fletcher of receiving and distributing child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). The district court[1] sentenced Fletcher to concurrent terms of 108 months imprisonment followed by ten

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

years of supervised release. Fletcher appeals, arguing the district court erred in giving the jury a willful blindness instruction, the evidence was insufficient to convict, and his sentence is substantively unreasonable. We affirm. Because the jury instruction issue turns on the evidence presented at trial, we will first address Fletcher's challenge to the sufficiency of the evidence.

## I. Sufficiency of the Evidence.

The indictment charged Fletcher with four offenses, advertising child pornography on BitTorrent, a peer-to-peer file-sharing network, and distributing, receiving, and possessing child pornography. At trial, the government introduced documentary evidence, digital images and videos, and the testimony of three witnesses: FBI Special Agent Robert Blackmore, Iowa Department of Criminal Investigation Special Agent Robert Larsen, and FBI forensic examiner Jordan Warnock. The jury acquitted Fletcher of the most serious offense, advertising child pornography. It convicted him of the distributing and receiving offenses. As instructed, it did not return a verdict on the lesser included possession offense. See United States v. Smith, 910 F.3d 1047, 1053-54 (8th Cir. 2018).

Special Agent Blackmore testified that a computer user interested in BitTorrent peer-to-peer file-sharing first downloads a BitTorrent file-sharing program. This creates a "download or shared folder" on the user's computer. The download/shared folder both receives downloads and shares files. The user chooses and downloads into the BitTorrent program a "Torrent file" that contains desired content. The program finds and connects with other computers on the BitTorrent network that are sharing the desired content and brings different "pieces" of the file from multiple other users to the user's download/shared folder. A piece sitting in the download/shared folder "is available to be shared out back across the internet for others who are interested in the same content." Blackmore explained that the

BitTorrent user can transfer pieces from the download/shared folder to other devices and folders.

On September 28 and 29, 2016, using investigative software to search the BitTorrent network for digital images and videos, Blackmore discovered a download/shared folder sharing multiple files having unique "hash values" (digital fingerprints) of known or suspected child pornography. Examining the contents of this BitTorrent folder, Blackmore found several images of child pornography from the Lolita Series and a child pornography video. He downloaded the Lolita Series images and video directly from the download/shared folder; they were admitted into evidence at trial. Blackmore also determined that this folder had shared numerous files with hash values of known and suspected child pornography within the previous 180 days. The government introduced, without objection, a screen shot Blackmore took after completing his downloads showing fourteen hash values downloaded almost one hundred times during that period.

On cross examination, Blackmore admitted his search did not disclose whether the child pornography files he downloaded had been viewed by any other BitTorrent user. But, he explained, installing the BitTorrent program sets up a download/shared folder the contents of which can be viewed by others on the BitTorrent network, unless the user affirmatively changes this default setting. Like other peer-to-peer file sharing programs, the program instructions tell the user how to accept the default or change the settings so that the program's contents cannot be accessed by other BitTorrent users. See United States v. Shaffer, 472 F.3d 1219, 1221-22 (10th Cir. 2007) (explaining the Kazaa peer-to-peer file sharing program).

After downloading the Lolita Series images and the video, Agent Blackmore traced the IP address to Fletcher's home in Council Bluffs, Iowa. Special Agent Larsen executed a warrant search of Fletcher's residence on April 12, 2017. The search team seized three devices -- a desktop computer, a laptop computer, and

Fletcher's smartphone. After Larsen told Fletcher he was not under arrest and was free to leave, Fletcher agreed to a recorded forty-five minute interview. The recorded interview was played at trial, and a transcript admitted into evidence.

In the interview, Fletcher said he knew what peer-to-peer file sharing was and remembered using BitTorrent "to download movies and then clean them." Fletcher said he ran a program called "PeerBlock" when using BitTorrent "so that people won't go into your computer" and conclude he was stealing movies. He also used BitTorrent to search for pornography:

> I would get a file and then it would show that person's collection. And then if there was somethin' that looked interesting I would click on it.

Fletcher admitted he would "run across" child pornography while looking for adult pornography. Larsen asked how many times Fletcher downloaded child pornography on BitTorrent:

> Too much. Too much. And . . . and the thing is I would get it but then I . . . I wouldn't want it. I would feel repulsed and I would get rid of it, because I . . . I don't like that. . . . But it was just like there was this snare like because you shouldn't have it you should get it. And then I'd get it and be like no, I don't want this.

Larsen asked, "So you think thousands of files?" Fletcher replied, "Yeah." He admitted downloading images from the Lolita Series the prior September, when Blackmore downloaded those images, and then getting rid of them a month later. Fletcher admitted going "back and forth" to adult and child pornography on BitTorrent, using as search terms "nudist," "naturalist," and "LS Models." He used the CCleaner wiping program and encryption on the files he downloaded.

-4-

FBI forensic examiner Warnock testified that he recovered twenty-six images of child pornography from Fletcher's desktop computer and 791 child pornography graphic files from the laptop computer. Almost all images were in "unallocated space" where deleted files are found. Many files previously held in the BitTorrent download/shared folder had names like "pedo," "pthc," and "7yo," indicative of child pornography. A video player on the desktop had recently played files with child pornographic names. Warnock also located the "CCleaner" program on both computers, which deletes and overwrites files on a hard drive. CCleaner was run on the desktop computer 321 times and on the laptop computer 119 times. Finally, Warnock found images of child pornography on the smartphone and a web history that included searches for "nudist" and "naturalist."

Fletcher, testifying in his own defense, admitted he was an addict who mass downloaded tens of thousands of adult pornographic images and videos. He testified that he did not intentionally download or distribute child pornography but admitted receiving child pornography in adult pornography mass downloads, downloads that contained many more images than he actually viewed. Periodically, out of guilt, he would delete all the pornography with CCleaner, only to relapse and mass download again. He attributed inculpatory statements to Agent Larsen to fear and confusion.

Fletcher testified he began using BitTorrent to download commercial movies, using "PeerBlock" so that "no one can see what you're doing" and "no one can take anything from you." After his wife left him, he found erotic materials in downloaded BitTorrent "libraries." He would click on a user, "put one or two words, tell my computer to grab everything from that user [and] download half a million to look at another time." Then he would "feel guilty," delete everything in the folders, then "get sucked right back into it" and start doing mass downloads again. Fletcher testified that, immediately after recognizing images from the Lolita Series as child pornography, he deleted all folders that contained LS Models images "because I

didn't want that." On cross-examination, Fletcher again admitted he had downloaded a BitTorrent program, giving him access to a peer-to-peer network.

On appeal, Fletcher argues there was insufficient evidence to convict him of knowingly receiving child pornography between January 2016 and February 28, 2017, and knowingly distributing child pornography on September 28 and 29, 2016. The evidence of receipt was insufficient, he argues, because he mass downloaded vast amounts of adult pornography and "could not possibly have viewed" the small fraction of deleted and undeleted files that contained child pornography. We conclude the government introduced overwhelming evidence that Fletcher knowingly and repeatedly accessed and received child pornography. As in Smith, 910 F.3d at 1051, in addition to the child pornography images recovered from his computers and introduced at trial, Fletcher admitted to Agent Larsen that he downloaded the BitTorrent peer-to-peer file sharing program on his password-protected computer, used common child pornography search terms to download child pornography from other users on the BitTorrent network, deleted many of those images using the CCleaner deletion program, and then downloaded them again. At trial, he admitted encountering Lolita Series images downloaded to his computer and recognizing those images as child pornography.

The sufficiency of the evidence of knowing distribution is a somewhat closer call. The district court's instructions did not initially define "distributes," the operative word in 18 U.S.C. § 2252(a)(2), and the term is not defined in § 2256. During their deliberations, the jury sent the court a note asking:

> Would the defendant need to have knowledge of files being or having been transferred from the Defendant's computer in order to satisfy the definition of "Distribution" of content?

The district court responded, without objection:

> To satisfy the definition of "Distribution" of content, the Defendant has to have knowledge that the visual depictions were maintained in a shared folder and that maintaining the visual depictions in the shared folder allows others to download them. The Defendant does not have to have knowledge of the visual depictions being or having been transferred from the Defendant's computer.

This instruction is not challenged on appeal. Moreover, the instruction is consistent with our discussion of the issue in United States v. Collins, 642 F.3d 654, 656-57 (8th Cir. 2011); accord Shaffer, 472 F.3d at 1224. Thus, the issue before us is "whether the trial evidence permitted a reasonable jury to [convict Fletcher] on the elements of the [distribution offense] as instructed." S.M. v. Lincoln Cty., 874 F.3d 581, 587 (8th Cir. 2017).

There was evidence Fletcher downloaded BitTorrent knowing it was a peer-to-peer file-sharing program, knowingly downloaded files that included child pornography into his download/shared folder from the computers of other BitTorrent users, resumed doing so after learning the downloads included child pornography images, and repeatedly, out of guilt, deleting those files. Agent Blackmore downloaded child pornography from Fletcher's computer on September 28 and 29, 2016, demonstrating that images stored in the BitTorrent download/shared folder were available to other users and that Fletcher had not blocked others' access with PeerBlock. What was lacking, however, was direct evidence from the Larsen interview or from Fletcher's trial testimony that he understood that maintaining files in his BitTorrent download/shared folder "allows others to download them." See United States v. Durham, 618 F.3d 921, 929 (8th Cir. 2010) (opinion of Bye, J.) ("While there is direct evidence of [the defendant's] knowledge of *downloading* files via Limewire, there is no such evidence of his knowledge of *uploading*, i.e.

distributing files . . . which is a critical distinction in this case."); compare United States v. Furman, 867 F.3d 981, 987-88 (8th Cir. 2017) (evidence of knowledge other LimeShare users could share); Shaffer, 472 F.3d at 1222 (defendant admitted he stored images in his Kazaa shared folder because "Kazaa gave him . . . incentive rewards corresponding to how many images other users downloaded from his computer").

"We may reverse only if we conclude that no reasonable jury could have found [Fletcher] guilty beyond a reasonable doubt." United States v. Van, 543 F.3d 963, 964 (8th Cir. 2008). Here, though the government's evidence of distribution was not overwhelming, as the jury's acquittal on the advertising count confirms, we conclude that a reasonable jury could find Fletcher guilty of knowing distribution based on Agent Blackmore's unrefuted description of the BitTorrent file-sharing program; Fletcher's admission that he knowingly downloaded and used the BitTorrent program at least for one-way file sharing; the evidence in Exhibit 5 that many others as well as Blackmore had in fact downloaded child pornography from Fletcher's BitTorrent download/shared folder in the 180 days ending on September 28 and 29, 2016; and the fact that Fletcher's trial testimony varied substantially from his recorded interview with Agent Larsen. As in Shaffer, from this evidence "a reasonable jury could find that Mr. [Fletcher] welcomed people to his computer and was quite happy to let them take child pornography from it." 472 F.3d at 1224; see United States v. Hill, 750 F.3d 982, 988-89 (8th Cir. 2014).

## II. The Willful Blindness Jury Instruction.

The government had the burden to prove that Fletcher "knowingly" received and distributed child pornography. 18 U.S.C. § 2252(a)(2). Over Fletcher's objection, the district court included the "willful blindness" jury instruction in Section 7.04 of the Eighth Circuit Criminal Jury Instructions (2017):

You may find that the defendant acted knowingly if you find beyond a reasonable doubt that the defendant believed there was a high probability that the images he received or possessed and then advertised or distributed were images of child pornography and that he took deliberate actions to avoid learning of that fact. Knowledge may be inferred if the defendant deliberately closed his eyes to what would otherwise have been obvious to him. A willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. You may not find the defendant acted "knowingly" if you find he was merely negligent, careless, or mistaken as to the fact that the images he received or possessed and then advertised or distributed were images of child pornography.

You may not find the defendant acted knowingly if you find that the defendant actually believed that he did not receive, possess, advertise, or distribute images of child pornography, as applicable to each count.

On appeal, Fletcher argues the district court abused its discretion in giving this instruction for two reasons. We review a challenge to a jury instruction for abuse of discretion and consider whether any error was harmless. United States v. Trejo, 831 F.3d 1090, 1095 (8th Cir. 2016).

First, Fletcher argues, without supporting authority, the Supreme Court's decision in United States v. X-Citement Video, Inc., 513 U.S. 64 (1994), categorically bars use of a willful blindness instruction in § 2252 prosecutions. X-Citement held that the "knowingly" *mens rea* requirement "extends both to the sexually explicit nature of the material and to the age of the performers." Id. at 78. A willful blindness instruction, Fletcher contends, "essentially negates the requirement of conscious and deliberate involvement with child pornography." We disagree. A willful blindness instruction does not negate or improperly diminish the government's burden to prove knowing receipt or distribution. Rather, "a willful blindness instruction is one way in which a jury can permissibly find that a defendant acted knowingly." United States

v. Figueroa-Lugo, 793 F.3d 179, 192 (1st Cir. 2015). And here, the district court adequately addressed any risk the jury would convict on a lesser *mens rea* standard by instructing that it may not convict if Fletcher "was merely negligent, careless, or mistaken as to the fact that the images he received or possessed and then advertised or distributed were images of child pornography." See United States v. Parker, 364 F.3d 934, 947 n.3 (8th Cir. 2004).

Second, Fletcher argues the district court lacked an evidentiary basis to give the willful blindness instruction. A willful blindness instruction should not be given "if the evidence in a case points solely to either actual knowledge or no knowledge of the facts in question." United States v. Hernandez-Mendoza, 600 F.3d 971, 979 (8th Cir. 2010) (cleaned up), cert. denied, 562 U.S. 1257 (2011). Here, Fletcher argues, the government requested a willful blindness instruction, but its theory of the case, as emphasized at closing argument, was Fletcher's actual knowledge of the child pornography on his computers and available in his shared BitTorrent folder, whereas Fletcher's defense was no knowledge of the child pornography despite incriminating statements that were coerced by Agent Larsen.

After considerable argument, the district court ruled that it would give the deliberate ignorance instruction. Fletcher's defense was that he did not knowingly download child pornography. But he testified that, after discovering and deleting child pornography in materials he downloaded (such as Lolita Series images), he continued or resumed mass downloading without examining what he downloaded and continued to use search terms likely to return child pornography like the Lolita Series and "naturalist." This testimony supported an inference that he deliberately closed his eyes to the high probability he would continue to receive and distribute child pornography through his BitTorrent download/shared folder. See United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004). In evaluating the district court's decision to give this instruction, "we view the evidence and any reasonable inference from that evidence in the light most favorable to the government." United States v.

<u>Sigillito</u>, 759 F.3d 913, 939 (8th Cir. 2014) (quotation omitted). There was no abuse of discretion.

## III. The Sentencing Issue.

At sentencing, the district court determined that Fletcher's advisory guidelines range was 168 to 210 months imprisonment. After considering the 18 U.S.C. § 3553(a) sentencing factors, the district court imposed concurrent 108-month sentences on each count. The court explained that it was varying downward, "not to the extent advocated for by the defense, but a substantial amount based upon . . . the nature and circumstances of this offense and the history and characteristics of the defendant." Specifically, the court cited Fletcher's lack of criminal history, family support, a psychiatrist's diagnosis of obsessive compulsive disorder, and the fact that child pornography was a small portion of his total pornography collection. The court rejected the psychiatrist's "low risk" sexual offense assessment as inconsistent with the evidence presented at trial.

Fletcher argues the district court imposed a substantively unreasonable sentence in declining to vary down to the 74 months he requested. He contends the court gave inadequate weight to his lack of criminal history, to the sexual offense risk assessment, and to his argument that the child pornography sentencing guidelines are flawed and overly harsh. We review a challenge to the substantive reasonableness of a sentence for abuse of discretion. <u>United States v. Deering</u>, 762 F.3d 783, 787 (8th Cir. 2014). "[W]here a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." <u>Id.</u> (quotation omitted). The district court thoroughly considered all of Fletcher's contentions and gave each the weight the court thought appropriate in reaching a final sentence significantly below

the advisory guidelines range. There was no abuse of the court's substantial sentencing discretion.

The judgment of the district court is affirmed.

_____