# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1620
_____

United States of America

*Plaintiff - Appellee*

v.

Jamaal Marquie Mays

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: February 10, 2020
Filed: July 24, 2020
_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Jamaal Mays, attempting to rob a cell phone store in suburban Inver Grove Heights, Minnesota, aimed a handgun at the store employee's head. The store employee drew a handgun he was licensed to carry and the two exchanged gunshots. Mays's bullets hit store property. Two of the three bullets fired by the employee struck Mays. The third traveled through the store wall and grazed the lower back of a chef working in the kitchen of a neighboring restaurant. Police responded, and

Mays was taken to the hospital with serious injuries. The restaurant employee, suffering from bleeding, burning sensations, and soreness, had the injury bandaged at a local clinic, and the wound needed continued care after she left the clinic.

Mays pleaded guilty to one count of violating the Hobbs Act by robbery, 18 U.S.C. § 1951(a), and one count of discharging a firearm during the commission of the robbery, 18 U.S.C. § 924(c)(1)(A). He acknowledged that the firearm offense required a mandatory consecutive term of not less than 10 years "in addition to the punishment provided for" the robbery offense. 18 U.S.C. § 924(c)(1)(A)(iii); see USSG § 2K2.4(b). The plea agreement identified USSG § 2B3.1 as the applicable offense conduct provision for the Hobbs Act offense but left open whether the enhancement to be applied for the restaurant employee's injury would be two levels, because she suffered "bodily injury," or three levels, because her injury fell between "bodily injury" and "serious bodily injury." See USSG § 2B3.1(b)(3)(A) and (D).

At sentencing, the district court[1] found that the three-level enhancement was proper, resulting in an advisory guidelines range of 70 to 87 months imprisonment for the robbery offense. The court varied downward because Mays's criminal history category VI was slightly over-representative. It imposed a sentence of 180 months imprisonment, 60 months for the robbery offense and a consecutive 120 months for the firearm offense. Mays appeals, arguing the court erred in imposing the three-level enhancement and abused its discretion by imposing a substantively unreasonable sentence. We affirm.

---

[1]The Honorable John R. Tunheim, Chief Judge of the United States District Court for the District of Minnesota.

## I. USSG § 2B3.1(b)(3) Issues.

**A.** Section 2B3.1(b)(3) provides that, if "any victim sustained bodily injury" during a robbery offense, the base offense level of 20 should be increased from two to six levels "according to the seriousness of the injury." The Guidelines define "bodily injury" warranting a two-level increase as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1, comment. (n.1B). A "serious bodily injury" warranting a four-level increase is an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." § 1B1.1, comment. (n.1M). A three-level increase is warranted "[i]f the degree of injury is between" bodily injury and serious bodily injury. § 2B3.1(b)(3)(D).

Mays's Presentence Investigation Report ("PSR") recommended a three-level increase. Mays objected "that the offense conduct instead supports a two-level increase." The Probation Officer responded:

> Here, the stray bullet that grazed JJ in the neighboring establishment caused a burning sensation, bleeding, and she was found by coworkers on the ground after she was injured. JJ was brought to a clinic and treated for a "minor gunshot wound to the side." JJ later reported to officers that her injury was sore and required her to change her bandage frequently.
>
> Given these details, the 3-level increase was applied because it appeared that JJ's injury was greater than bodily injury that was painful and obvious, but not as severe as serious bodily injury as she did not require surgery or hospitalization. JJ sought medical attention, the grazing was sore for a period of time, and the injury required ongoing care.

At sentencing Mays did not object to these factual statements, which the district court adopted. The court imposed the three-level increase, explaining that the restaurant employee's injury "was slightly greater than being painful and obvious, and certainly it's of a type for which medical attention would normally be sought, but I don't think it's as severe as the serious bodily injury which would require a four-point increase. I think it does indeed fall between." We review that finding for clear error. See United States v. Bryant, 913 F.3d 783, 787 (8th Cir. 2019).

On appeal, Mays's counseled brief argues that the PSR's description of the employee's injury "falls squarely within the definition for 'bodily injury.'" The government introduced no additional evidence, and the district court made no additional findings to support the contested enhancement. Therefore, Mays argues, the record does not support the three-level increase and resentencing is required, citing United States v. Dodson, 109 F.3d 486, 489 (8th Cir. 1997). We disagree.

In Dodson, the PSR stated that a police officer had sustained "minor injuries" while arresting the defendant. Because the government presented no evidence at sentencing as to the nature and extent of those injuries, we reversed the two-level enhancement: "Characterizing injuries as 'minor' is not consistent with the Guidelines' definition of 'bodily injury' as 'significant injury.'" Id. at 489.

Here, by contrast, the PSR included undisputed factual statements describing the nature and extent of the victim's injuries. The injuries as described were more than the temporary pain and discomfort that warranted two-level increases in United States v. Hoelzer, 183 F.3d 880, 882-83 (8th Cir. 1999) (bruises from kicks to face, chest, and legs), and United States v. Maiden, 606 F.3d 337, 340 (7th Cir.) (bank tellers suffered burning sensation in eyes from pepper spray), cert. denied, 562 U.S. 938 (2010). But the injuries were less serious than those that warranted four-level increases in United States v. Thompson, 60 F.3d 514, 518 (8th Cir. 1995) (blow to back of head causing unconsciousness and requiring hospitalization), and United

States v. Moore, 997 F.2d 30, 37 (5th Cir.) (extremely painful gun shot wound that required emergency room treatment and extended loss of work), cert. denied, 510 U.S. 1029 (1993).  The district court did not clearly err in finding that the restaurant employee's injury "does indeed fall between" bodily injury and serious bodily injury and imposing the three-level increase.

**B.** While this appeal was pending, Mays moved for leave to file a *pro se* supplemental brief arguing the district court committed plain error because any § 2B3.1(b)(3) enhancement is precluded by Application Note 4 to USSG § 2K2.4, which provides in relevant part:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense.  A sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct).

Mays argues that a § 2B3.1(b)(3) increase is precluded because it is a "specific offense characteristic" of an underlying robbery offense that was punished "in conjunction" with his § 924(c) offense. Though our decision in Dodson assumed that a § 2B3.1(b)(3) increase could be imposed on a defendant convicted of armed bank robbery and a § 924(c) offense, we did not address this issue.  109 F.3d at 488-89. We typically do not address arguments in a *pro se* filing by an appellant represented by counsel.  But we will exercise our discretion to grant the motion for leave to file and consider this potentially significant issue.  See United States v. Miranda-Zarco, 836 F.3d 899, 901 (8th Cir. 2016).

The Sentencing Commission significantly amended Application Note 4 on November 1, 2000, to clarify "that no guideline weapon enhancement should be applied when determining the sentence for the crime of violence or drug trafficking offense underlying the 18 U.S.C. § 924(c) conviction." USSG App. C, Amend. 599. The Commission explained that the amendment "is intended to avoid the duplicative punishment that results when sentences are increased under both the statutes and the guidelines for substantially the same harm." Id.

In support of his argument, Mays cites decisions holding that amended Application Note 4 precluded applying a variety of weapons-based enhancements in determining the advisory guidelines range sentences for offenses underlying § 924(c) convictions. See United States v. Foster, 902 F.3d 654 (7th Cir. 2018) (§ 2B3.1(b)(2)(F) enhancement for bomb threat during armed bank robbery); United States v. Aquino, 242 F.3d 859 (9th Cir.), cert. denied, 533 U.S. 963 (2001) and United States v. Knobloch, 131 F.3d 366 (3d Cir. 1997) (§ 2D1.1(b)(1) enhancements for possessing a firearm during a drug offense); United States v. Beener, No. 18-CR-72-CJW-MAR, 2019 WL 2505042 (N.D. Iowa June 17, 2019) (§ 2B3.1(b)(2)(D) enhancement for possessing a dangerous weapon during a robbery). Accord United States v. Brown, 332 F.3d 1341 (11th Cir. 2003), United States v. Smith, 196 F.3d 676 (6th Cir. 1999) and United States v. Wymes, 558 F. App'x 718 (8th Cir. 2014) (unpublished) (§ 2K2.1(b) enhancements for using a firearm in committing another felony offense).

The difficulty with Mays's argument is that, while § 2B3.1(b)(2)(A)-(F) is a firearm enhancement, § 2B3.1(b)(3) is not. It is an injured victim enhancement that can apply regardless of whether a firearm is used. See, e.g., United States v. Eubanks, 593 F.3d 645, 651-52 (7th Cir. 2010) (dragging store employee by her hair); Thompson, 60 F.3d at 516 (blow to head with closed fist). "It is not the defendant's conduct . . . which determines whether a victim has sustained bodily injury; rather, the resultant physical injury is the determining factor." Dodson, 109 F.3d at 489.

The stated purpose of Application Note 4 is to avoid duplicative punishment, known as double counting in the Guidelines universe. "[A] court impermissibly double counts when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." Bryant, 913 F.3d at 787 (quotation omitted). The Commission in Application Note 4 logically concluded that double counting occurs when a guidelines enhancement "for possession, brandishing, use, or discharge of an explosive or firearm" is imposed for an underlying offense when the total sentence will include consecutive punishment for a § 924(c) firearm offense. Sections 2B3.1(b)(2) and (b)(3) are offense characteristics that "respond[] to a separate aspect of [the defendant's] conduct: § 2B3.1(b)(2)(A) that he fired at a person, § 2B3.1(b)(3)(B) that the shot seriously injured the target." United States v. Swoape, 31 F.3d 482, 483 (7th Cir. 1994). Thus, Mays's argument is contrary to the plain meaning of Application Note 4 because § 2B3.1(b)(3) is not a "specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm." It is the additional harm of victim injury resulting from the robbery, however caused, that is addressed by this enhancement. Here, the restaurant employee was injured by the discharge of a *third person's* firearm.

We have found no reported decision holding that Application Note 4 precluded a § 2B3.1(b)(3) enhancement. It is notable that the Seventh Circuit in Eubanks upheld "weapons enhancements" under § 2B3.1(b)(2)(D) and "injury enhancements" under § 2B3.1(b)(3). 593 F.3d at 649-52. In its later decision in Foster, the Seventh Circuit criticized the weapons enhancement analysis in Eubanks based on Application Note 4, 902 F.3d at 663, but did not even mention the injury enhancements in Eubanks. This divergent analysis runs contrary to Mays's argument. Having considered this argument in the context of amended Application Note 4, we conclude paragraphs 23 and 24 of Mays's PSR were correct -- Application Note 4 precluded a firearm specific offense characteristic under § 2B3.1(b)(2), but not a victim injury increase under § 2B3.1(b)(3). Accord United States v. Wellington, 269 F. App'x 900, 902 & n.4 (11th Cir. 2008) (unpublished).

## II. Substantive Reasonableness.

Mays next challenges the substantive reasonableness of his Hobbs Act sentence, contending the district court inadequately weighed the sentencing factors of 18 U.S.C. § 3553(a). We review this issue under a deferential abuse of discretion standard. United States v. Fletcher, 946 F.3d 402, 409 (8th Cir. 2019). Mays argues the district court ignored his newfound appreciation for the harm caused by his extensive criminal history, his supportive family and involvement in his children's lives, his troubled childhood with an alcoholic father, and his age of 34 making him unlikely to recidivate after serving a mandatory ten-year sentence. In granting a small downward variance, the district court explained that it found the nature and circumstances of the offense "extremely serious." "Certainly you have been involved in serious criminal activity, and the gang activity is very serious." However, the court also noted mitigating factors -- the impact of Mays's childhood and the family responsibilities he has recognized.

The district court obviously considered all the circumstances of Mays's offense in light of the § 3553(a) factors, including those emphasized by Mays on appeal. "Where a district court has sentenced a defendant below the advisory Guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." Fletcher, 946 F.3d at 409 (cleaned up). Mays's complaint is that the district court did not weigh the relevant factors as he wished, but "district courts are allowed wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Callaway, 762 F.3d 754, 760 (8th Cir. 2014) (quotation omitted). There was no abuse of the court's substantial sentencing discretion.

The judgment of the district court is affirmed.

_____