**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4737**

UNITED STATES OF AMERICA,

 Plaintiff - Appellee,

v.

MELVIN THOMAS LEWIS,

 Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:16−cr−00232−MOC−DSC−1)

Argued: September 21, 2021      Decided: December 1, 2021

Before AGEE and WYNN, Circuit Judges, and Frank W. VOLK, United States District Judge for the Southern District of West Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Agee and Judge Volk joined.

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

WYNN, Circuit Judge:

Melvin Thomas Lewis pleaded guilty to conspiracy to commit robbery, robbery, and brandishing a firearm in relation to a crime of violence. The district court sentenced him to 130 months' imprisonment.

On appeal, Lewis argues that his sentence is procedurally unreasonable because the district court erroneously applied a sentencing enhancement for bodily injury. We agree and therefore vacate Lewis's sentence and remand for resentencing.

I.

The relevant facts are as follows. On August 25, 2016, Lewis and two other men robbed a pawn shop in Charlotte, North Carolina at gunpoint. The store manager, another employee, and a customer were present. During the robbery, Lewis pointed his firearm at the manager and struck him in the back of the head three times, causing him to fall to the floor. In all, the robbers stole twenty-eight firearms, more than $61,000 worth of jewelry, and $2,000 in cash.

When the police arrived, they found a "red spot" on the back of the manager's head, although it was not bleeding. J.A. 43.[1] The manager said he felt "dizzy" and, though the injury was "non-life threatening," he was taken to the hospital. J.A. 12, 36. His medical expenses totaled $3,676.92 but the record does not indicate what diagnostic tests or treatments those costs included.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. Citations to the "S.J.A." refer to the Sealed Joint Appendix.

Lewis was arrested about one week after the robbery. Several months later, a grand jury sitting in the Western District of North Carolina returned a three-count superseding indictment charging Lewis with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) ("Count I"); Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951–52 ("Count II"); and brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count III"). On May 26, 2017, Lewis pleaded guilty to all three counts of the superseding indictment.

As is customary, a U.S. Probation Officer prepared a Presentence Investigation Report in advance of sentencing. The Report grouped Count I and Count II and, for those counts, determined that Lewis's base offense level was 20. However, it recommended adding a two-level enhancement because a victim sustained bodily injury; a one-level enhancement because Lewis and his codefendants stole firearms; and a one-level enhancement because the store lost items valued at more than $20,000 but less than $95,000. *See* U.S.S.G. § 2B3.1(b)(3)(A), (6), (7)(B) (2016). After a three-level downward adjustment for acceptance of responsibility, Lewis's total offense level for Counts I and II was set at 21. Because Lewis fell under a criminal history category of III, the calculated sentencing range for Counts I and II was 46 to 57 months' imprisonment. Count III required an 84-month mandatory minimum sentence to be served consecutive to any sentence for Counts I and II. *See* 18 U.S.C. § 924(c)(1)(A)(ii).

Lewis filed a written objection to the Presentence Investigation Report's recommended two-level enhancement for bodily injury.[2] He argued that under the Sentencing Guidelines an injury must be "significant" to sustain the enhancement and that no such injury occurred here. S.J.A. 85. The Probation Officer rejected his argument and confirmed that the enhancement was "appropriate" because "[e]vidence indicates that the victim was struck in the back of the head with a gun three times and sought medical attention." S.J.A. 107.

At sentencing, Lewis renewed his objection to the bodily injury enhancement. He acknowledged that, under the Guidelines, if the manager's injuries were "painful or obvious" or were injuries for which "medical treatment ordinarily would be sought," they would qualify as "significant." J.A. 36; *see* U.S.S.G. § 1B1.1 cmt. n.1(B) (defining "[b]odily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought"). But he contended that under controlling case law an injury must also have "more than momentary consequences" to be "significant." J.A. 37. Because there was "no wound," "no blood," "no laceration," and "no medical record suggesting that [the manager suffered] any sort of significant injury," Lewis argued the enhancement should not apply. J.A. 36.

The Government initially agreed that the injury "must last for some meaningful period," perhaps at least "a few hours," to trigger the enhancement. J.A. 41. But later, the

---

[2] Lewis also objected to the one-level enhancement for loss amount but withdrew this objection at sentencing.

Government argued that "the length [of time] of the injury and how long [the victim is] suffering" is *not* a factor in the bodily injury enhancement. J.A. 43. The Government contended that the manager's injuries were "significant" because he had a "red mark" where Lewis struck him, felt "dizzy" afterwards, and sought medical "treatment." J.A. 39, 42, 44. Though the Government conceded it did not have any of the manager's medical records, it argued the hospital "must have done something while he was there" since he was charged over $3,600. J.A. 39.

The district court found the applicability of the bodily injury enhancement to be "a close case." J.A. 44. The court recognized that even if a defendant "hit somebody three times in the head," it "doesn't matter how hard [they] hit them" if the victim suffered no significant injury. J.A. 51. Nevertheless, "[a]fter hearing the type of violence involved in [Lewis's] assault" of the manager, the court "guess[ed]" that the manager had suffered a "mild concussion." J.A. 52–53. Because the manager "just has to have an injury that caused him to seek medical attention, and he did," the enhancement applied. J.A. 53.

Lewis then pivoted to a series of arguments in support of a five-month downward variance. But the court denied his request and sentenced Lewis to a total of 130 months' imprisonment: 46 months for Counts I and II, to be served concurrently, followed by 84 months for Count III, to be served consecutively. Lewis timely filed a notice of appeal.

## II.

On appeal, Lewis challenges only the procedural reasonableness of his sentence. This Court "review[s] a defendant's sentence 'under a deferential abuse-of-discretion standard.'" *United States v. Lynn*, 912 F.3d 212, 216 (4th Cir.) (quoting *Gall v. United*

*States*, 552 U.S. 38, 41 (2007)), *cert. denied*, 140 S. Ct. 86 (2019). We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Davis*, 679 F.3d 177, 182 (4th Cir. 2012). In determining whether a sentence is procedurally reasonable, we consider "whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019) (citing *Gall*, 552 U.S. at 49–51).

Lewis argues that his sentence is procedurally unreasonable because the district court (1) erroneously calculated his Guidelines range when it applied the bodily injury enhancement, and (2) failed to address some of his nonfrivolous arguments for a below-Guidelines sentence. We reach only the first argument because we conclude that the district court erred in applying the bodily injury enhancement and vacate and remand on that basis.

A.

We begin with the legal background for the bodily injury enhancement. The Sentencing Guidelines prescribe a two-level increase to a defendant's offense level for a robbery if "any victim sustained bodily injury." U.S.S.G. § 2B3.1(b)(3)(A) (2016). "Bodily injury" is defined in the Guidelines commentary as "any significant injury." *Id.* § 1B1.1 cmt. n.1(B). The term "significant injury" is not defined, but the Guidelines commentary provides two nonexhaustive examples of qualifying injuries: "an injury that is painful and obvious," or an injury "of a type for which medical attention ordinarily would be sought."

6

*Id.* This commentary is binding on us. *See United States v. Lancaster*, 6 F.3d 208, 209 (4th Cir. 1993) (per curiam) (citing *Stinson v. United States*, 508 U.S. 36, 41–44 (1993)).

This Court carefully considered the meaning of "significant injury" in *United States v. Lancaster*.[3] Because this term, "by its open-ended nature, cannot be defined with exactitude," we held that "[w]hether an injury is 'significant' . . . should not be determined by a precise standard meted out at the appellate level and mechanically applied by the district court." *Id.* at 210. The trial judge is "far be[tter]-situated" to determine whether the "multitude" of "articulable" and "intangible" factors presented add up to a "significant injury." *Id.* However, we did provide some "general guidance" for district courts applying this standard. *Id.*

To start, though a significant injury "need not interfere completely with the injured person's life," it "cannot be wholly trivial." *Id.* at 209. Relatedly, while a significant injury "need not last for months or years," it "*must* last for some meaningful period." *Id.* (emphasis added). Therefore, "momentary" injuries "with no lasting effects . . . are not 'significant.'" *Id.* at 210. Finally, purely "precautionary" measures are "not the type of 'medical attention' that the Guidelines contemplate as being sought after significant injuries." *Id.* at 210 & n.2; *see also United States v. Harris*, 44 F.3d 1206, 1218 (3d Cir. 1995) ("If, as in *Lancaster*, medical attention would be sought by an ordinarily prudent

---

[3] Although *Lancaster* considered an earlier version of the Guidelines, the text of the definition in question was the same as in the 2016 version employed at Lewis's sentencing.

person for the purpose of diagnosis but no treatment ensues, that attention does not help to establish the significance of the injury.").

We then applied these principles to the facts. In *Lancaster*, the defendant and three others had robbed a truck outside a bank. *Lancaster*, 6 F.3d at 209. During the robbery, they sprayed mace into the eyes of a security guard protecting the truck. *Id.* This "stunned" the guard and "caused severe burning in his eyes and cheeks." *Id.* Though he was later examined by an optometrist "as a precautionary measure," the Government "presented no evidence that the mace created any lasting health problems." *Id.* The district court found this injury was not "significant," and on appeal, we had "no trouble finding that the district court did not clearly err." *Id.* at 210. To wit, the optometrist's examination "was not the type of 'medical attention' that the Guidelines contemplate as being sought after significant injuries because it was precautionary only." *Id.*[4] And while the "burning in [the guard's] eyes and cheeks caused by the mace was undoubtedly unpleasant, and could not be described as wholly trivial, it was only momentary and the mace produced no lasting harm." *Id.* That distinguished *Lancaster* from *United States v. Isaacs*, 947 F.2d 112, 114 (4th Cir. 1991), where we upheld a finding of significant injury when the defendant's blow

---

[4] In reaching this conclusion, we also noted that optometrists are not medical doctors. *Lancaster*, 6 F.3d at 210. But, elsewhere, we indicated that "people who have sustained purely momentary injuries may often choose to be examined by a *doctor* as a precautionary measure," and that "we do not understand such precautionary examinations to be the type of 'medical attention' that the Guidelines contemplate to make an injury 'significant.'" *Id.* at 210 n.2 (emphasis added). So, while it is of course relevant if a victim does not seek attention from a medical expert like a doctor, the point is that *even if* the guard in *Lancaster* had seen a doctor, a "precautionary" medical visit would have been insufficient.

to the victim's face caused his face "to be red and puffy and his ears to ring *for hours*." *Lancaster*, 6 F.3d at 210–11 (emphasis added). In contrast, "[t]he effect of the mace on [the guard] in [*Lancaster*] lasted *minutes*, not hours." *Id.* at 211 (emphasis added).[5]

The Government acknowledges that *Lancaster* is controlling. And although it vacillated on this issue at sentencing, it now recognizes, consistent with *Lancaster*, that "injuries that are either momentary, with no lasting effects, or wholly trivial are not 'significant.'" Response Br. at 22 (quoting *Lancaster*, 6 F.3d at 210).

However, the Government takes issue with Lewis's characterization of *Lancaster*'s "standard." *Id.* at 26–27. We agree that Lewis's articulation of the test is not quite correct. Lewis argues that the Government must *either* "establish that the victim's injury was more than momentary *or* that he received medical attention that was more than precautionary." Reply Br. at 4 (emphasis added); *see also* Opening Br. at 22. But under *Lancaster*, an injury must *always* "last for some meaningful period" *and* be more than "wholly trivial" to qualify as significant. *See Lancaster*, 6 F.3d at 209–10 (describing these as mandatory conditions derived from the examples provided in the Guidelines). These are necessary, though

---

[5] *Lancaster* also recognized that if the district court had found the significance of the guard's injury was "'subject to some doubt,' it would properly have applied the rule of lenity to conclude that the injury was not 'significant.'" *Lancaster*, 6 F.3d at 210 (citation omitted); *see also United States v. Hall*, 972 F.2d 67, 69 (4th Cir. 1992) ("Under the rule of lenity any criminal statute, including a sentencing provision, must be construed in favor of the accused and against the government if it is ambiguous."). Though the district court here found the significance of the manager's injury was a "close case," J.A. 44, Lewis did not raise the rule of lenity as a defense, so he likely waived this argument, *see United States v. Young*, 989 F.3d 253, 258 n.1 (4th Cir. 2021). In any event, we need not resort to the rule of lenity here because, as explained below, the district court clearly applied the wrong legal standard.

perhaps not sufficient,[6] conditions for the enhancement. In contrast, where the Government presents a victim who suffered an injury "of a type for which medical attention ordinarily [would] be sought," it has made a sufficient, though not necessary, showing of significant injury. *Id.* at 210 n.2. This reading is consistent with the Guidelines, which mention "medical attention" injuries as one of two disjunctive and *nonexhaustive* examples of "significant" injuries. U.S.S.G. § 1B1.1 cmt. n.1(B).

To sum up, for the bodily injury enhancement to apply, the Government must show a "significant injury." This requires the Government at least to demonstrate that a victim's injuries lasted for a meaningful period and were more than wholly trivial. *Lancaster*, 6 F.3d at 210. These conditions—and the enhancement as a whole—are necessarily satisfied if the Government establishes that the victim's injuries were either "painful and obvious" or "of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 cmt. n.1(B); *see Lancaster*, 6 F.3d at 210 n.2 (finding that the two conditions it derived—lasting for a meaningful period and not being wholly trivial—were "consistent" with the Guidelines' "description of 'significant injury' as one that is 'painful and obvious'" and its "elaboration of 'significant injury' as being an injury 'of a type for which medical attention ordinarily [would] be sought'"). While the Government is not required to show significant injury using the medical-attention route, if it does, purely "precautionary" medical measures do not help establish a significant injury. *Lancaster*, 6 F.3d at 210 n.2.

---

[6] Whether these conditions, alone, would be sufficient, is a question that was not answered by *Lancaster* and is not before us today, because in neither case did the Government show that the injury lasted for a meaningful period.

10

B.

Next, we examine whether the district court applied the correct legal standard. We review this purely legal question de novo. *Davis*, 679 F.3d at 182.

After carefully parsing the district court's statements at sentencing, we conclude that it erred. To start, the district court did not determine whether the manager's injuries lasted for a "meaningful period." We recognize the court did not have to expressly find this condition was met if it determined that the manager's injuries were of a type for which more-than-precautionary medical attention ordinarily would be sought. Establishing the latter necessarily proves the former. But in this case, the court did neither.

Instead of assessing whether the manager's injuries were of a type for which more-than-precautionary medical attention ordinarily would be sought, the court found that "this *kind of an assault* would ordinarily cause an injury that you would seek medical attention" for. J.A. 52 (emphasis added). But as the court itself noted, it is the *injury* that matters, not the defendant's *conduct*. *See* J.A. 51 ("[I]f I hit somebody three times in the head and they suffer no injury, then . . . it doesn't matter how hard I hit them, there is no enhancement."); *see also United States v. Dodson*, 109 F.3d 486, 489 (8th Cir. 1997) ("It is not the defendant's conduct, however, which determines whether a victim has sustained bodily injury; rather, the resultant physical injury is the determining factor.").

Later, the court tried to correct course, declaring a victim "just has to have an *injury* that caused him to seek medical attention" for the enhancement to apply. J.A. 53 (emphasis added). But that is not the correct standard either. *Lancaster* holds that purely precautionary medical measures do not qualify as "medical attention." *Lancaster*, 6 F.3d at 210 n.2. An

11

"ordinarily prudent" victim must seek medical assistance on a more-than-precautionary basis for the injury to qualify as being "of a type for which medical attention ordinarily would be sought." *Harris*, 44 F.3d at 1218; U.S.S.G. § 1B1.1 cmt. n.1(B).

Nonetheless, the district court repeatedly stated that going to the hospital to get an injury "checked out" or "looked at" is enough for the enhancement to apply. J.A. 51–53. But if that were the case, victims "who ha[d] sustained purely momentary injuries" could transform those injuries into significant ones just by visiting the doctor. *Lancaster*, 6 F.3d at 210 n.2. This approach is expressly foreclosed by *Lancaster*. Therefore, we must vacate Lewis's sentence unless we can conclude that this error was harmless. *United States v. Lynn*, 592 F.3d 572, 581 (4th Cir. 2010); *see* Fed. R. Crim. P. 52(a).

## C.

For preserved "non-constitutional, non-structural errors like this," the Government bears the burden of demonstrating, with "fair assurance," that the errors "did not have a substantial and injurious effect or influence on the result." *Lynn*, 592 F.3d at 585 (citation and quotations omitted). Here, the Government gestures to a harmless error argument, but fails to fully develop it. However, the Government does forcefully argue that the record in this case compels us to uphold the district court's application of the bodily injury enhancement. To the extent the Government contends that the district court's legal error is harmless because the enhancement would apply under the facts of this case *even if* the court had used the right standard, it is mistaken.

At sentencing, the Government "had to show by a preponderance of the evidence that the Guidelines enhancement applied." *United States v. Arbaugh*, 951 F.3d 167, 173

12

(4th Cir. 2020). The Government claims that it satisfied its burden under *Lancaster*'s medical-attention test because the record shows the manager "sought treatment [at the hospital] for a reason beyond precaution." Response Br. at 27. But the Government failed to produce his medical records. Instead of evidence, the Government posits that "[medical providers] must have done *something* while [the manager] was there at the hospital" because he was charged nearly $3,700. J.A. 39 (emphasis added). But absent evidence showing the treatment rendered—such as the manager's medical records—we have no way of knowing what that "something" was. The Government counters that Lewis himself agreed, in the factual basis for his plea, that the manager received "treatment" at the hospital. *See* J.A. 12 ("The manager was transported to [the h]ospital for *treatment*." (emphasis added)); Response Br. at 24. But this hardly clears things up. And we decline to assume that the parties intended this ambiguous word to mean that the manager received more-than-precautionary medical attention.

To be sure, the Guidelines do not require the Government to always produce the victim's medical records to satisfy the medical-attention standard. After all, the test is whether the *injury* is "of a type for which [more-than-precautionary] medical attention *ordinarily* would be sought." This objective test focuses on the nature of the injury and the typical response to such an injury—not the victim's subjective decision to seek medical treatment or not. For example, if a victim received a deep laceration that would normally require stitches, but they decided to treat it at home with Band-Aids, that would not foreclose a finding of significant injury. Still, given that judges are not medical experts,

medical records will generally be helpful to determine if the injury is of such severity that medical attention ordinarily would be sought.

The Government suggests that no medical records are needed here because of the nature of the manager's injuries. Specifically, it notes that the manager went to the hospital "*because* he said *he felt dizzy*," Response Br. at 27 (emphasis in original) (quoting J.A. 36), and dizziness is an "intuitive symptom of significant injury associated with trauma," *id.* at 25. In effect, the Government is inviting us to find that the manager's dizziness was significant enough to objectively require more-than-precautionary medical attention.

This is a judgment call that we are ill equipped to make. "Dizziness" is a vague term covering a range of symptoms. Some people experiencing "dizziness" are just momentarily lightheaded; others suffering from dizziness have debilitating and long-lasting nausea, vomiting, vision distortions, and trouble walking or standing. *Dizziness*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/dizziness/symptoms-causes/syc-203717 87 (last visited Nov. 3, 2021) (saved as ECF opinion attachment). While it may be appropriate and expected to seek more-than-precautionary medical attention in these latter situations, the same cannot be said of momentary lightheadedness. In the present case, the record is silent on how debilitating the manager's dizziness was. And it would be inappropriate for us, as the appellate court, to determine this severity in the first instance.[7]

---

[7] The Government repeatedly invites us to assume that the manager's dizziness was significant because Lewis struck him "hard." Response Br. at 24. But, even assuming that is true, this conflates the severity of the assault with the significance of the injury. And as the district court recognized, "if I hit somebody three times in the head and they suffer no injury, then . . . it doesn't matter how hard I hit them, there is no enhancement." J.A. 51.

Therefore, we cannot conclude with anything close to "fair assurance" that the district court would have found the medical-attention test satisfied if it had articulated the correct standard.

This failure alone, however, is not fatal. As explained above, the Government does not have to show that more-than-precautionary medical attention ordinarily would be sought for the injury—it is a sufficient, but not a necessary basis for the enhancement. But the Government cannot establish a significant injury in a different way here because it produced no evidence of a necessary condition: that the manager's injuries were more than momentary.

The Government failed to produce any police reports, medical records, photographs, surveillance video, or relevant witness testimony.[8] Instead, it offers more speculation. For example, the Government argues that the manager's injuries "lasted at least long enough to cause a hospital visit." Response Br. at 25. But that does not prove that his injuries were more than momentary. The manager might have recovered quickly and decided to go to the hospital anyway as a precautionary measure. On this record, it is impossible to tell. At oral argument, Government counsel tried a similar tack, arguing that the manager's injuries must have lasted at least until the police arrived because they noted them in their report. But the record does not tell us how long it took the police to arrive. Because the

---

[8] One detective who saw the shop's surveillance video testified on behalf of the Government at the hearing. He confirmed that the manager was struck three times and fell to the ground. However, he admitted that he never spoke to the manager about his injuries or otherwise followed up with him.

Government is effectively asking us to engage in guesswork, we cannot say with "fair assurance" that the district court would have applied the enhancement if it had articulated the right legal standard.

In sum, the Government presented nothing that would help the district court conclude that the manager received more-than-precautionary medical attention. Nor did it otherwise provide evidence of a necessary condition: that the manager's injuries lasted for a "meaningful period." Therefore, we cannot agree that the district court would have applied the enhancement if it used the right legal standard, so its error was not harmless.

III.

For the reasons stated above, we hold that the district court erred in applying the bodily injury enhancement. That error was not harmless. Because this error requires us to vacate the district court's sentence, we find it unnecessary to determine if the court adequately considered Lewis's nonfrivolous arguments for a variance.

*VACATED AND REMANDED*